**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANJAN GHOSH TAGORE,

    Defendant-Appellant.

Nos. 97-6133 & 97-6136

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos. 96-CR-128 & CR-96-200)**

---

Daniel G. Webber, Jr. (Patrick M. Ryan, United States Attorney, with him on the brief), Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

John W. Coyle, III (Gloyd L. McCoy with him on the briefs), Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before **BALDOCK, BRORBY** and **LUCERO**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

    Defendant-Appellant Anjan Ghosh Tagore pled guilty to conspiring to receive and distribute visual depictions of minors engaged in sexually explicit

conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) and to possessing three

or more matters containing visual depictions of minors engaged in sexually

explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). The district court

sentenced him to 109 months on the conspiracy count and 60 months on the

possession count, the terms to run concurrently. The district court also imposed a

three-year term of supervised release for each count to run concurrently and a

$100.00 special assessment for each count. Mr. Tagore appeals the sentence

imposed under the Sentencing Guidelines. *See* United States Sentencing

Guideline's Manual (Nov. 1995) ("U.S.S.G.").

Mr. Tagore raises three issues on appeal. First, he contends the district

court erred in applying the cross reference contained in U.S.S.G.§ 2G2.2(c)(1)

based on the conduct of his co-defendants. Second, he alleges even if the court

properly considered the conduct of his co-defendants, that conduct was not

reasonably foreseeable and in furtherance of jointly undertaken criminal activity

as required under U.S.S.G. § 1B1.3. Lastly, Mr. Tagore contends the district

court erred in applying a four-level enhancement pursuant to §3B1.1 for his role

as an organizer or leader of the offense. We exercise jurisdiction pursuant to 28

U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## I. Background

Mr. Tagore was a member of an on-line Internet "chat room" called UPN (United Pedophilia Network), later changed to YGW (Young Girl Watchers). Members used this chat room to discuss child pornography and to trade digital image files via computer. Over a several-month period, Mr. Tagore engaged in numerous on-line conversations and maintained an ftp site, or electronic mailbox, through which he received and distributed digital images of child pornography He also authored a "charter" for the chat room, which listed chat room goals, membership policies, and established procedures for keeping the chat room secret.

Prior to and during the chat room's existence, several members filmed their own "homemade" child pornography. These films were then converted to digital image stills or "pics" for distribution to chat room members. Mr. Tagore was never accused of personally producing child pornography. However, he conversed with other members about their sexual encounters with minors and traded the resulting images. Computer files containing copies of members' homemade pornography and the chat room charter were found on Mr. Tagore's hard drive at the time of his arrest.

Mr. Tagore and three other chat room members were indicted for

conspiracy to receive and distribute visual depictions of minors engaged in sexually explicit conduct. In addition, Mr. Tagore was charged with knowingly transporting visual depictions of minors engaged in sexually explicit activity and with possession of three or more matters containing visual depictions of minors engaged in sexually explicit conduct. Mr. Tagore entered into a plea agreement in which he pleaded guilty to the conspiracy and possession charges and the government dismissed the transportation charge. A presentence report was prepared to which Mr. Tagore filed several objections. After a hearing, the district court sentenced Mr. Tagore to 109 months on the conspiracy charge and 60 months on the possession charge, the terms to run concurrently.

In reaching its decision, the district court first considered U.S.S.G. § 2G2.2, which contains a base offense level of 15 for violations of 18 U.S.C. § 2252. The district court then applied the cross reference contained in § 2G2.2(c)(1), which directed the court to § 2G2.1. Section 2G2.1 has a base offense level of 25. The court added eight points for specific offense characteristics and Mr. Tagore's role as an organizer or leader of the offense. The court then subtracted three points for Mr. Tagore's acceptance of responsibility, resulting in a total offense level of 30 with a sentencing range of 97 to 121 months.

## II. Cross reference

Mr. Tagore claims the district court improperly applied the cross reference contained in § 2G2.2(c)(1) based on the conduct of his co-defendants. He argues the cross reference should not have been applied because he did not personally participate in the conduct that triggers use of that cross reference. We review questions of law regarding the application of the guidelines *de novo*. *United States v. Pappert*, 112 F.3d 1073, 1078 (10th Cir.1997). We review the district court's underlying findings of fact for clear error. *Id*. We will not disturb the district court's findings unless the record does not support them or if after reviewing the record "we are left with the definite and firm conviction that a mistake has been made." *Id*. (citations omitted).

The appropriate guideline for violation of 18 U.S.C. § 2252(a)(1)-(3) is § 2G2.2. Section 2G2.2, in turn, contains a cross reference to § 2G2.1 if two criteria are met: (1) if the offense involved "causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," and (2) if the offense level calculated under § 2G2.1 is greater than that determined under § 2G2.2. U.S.S.G. § 2G2.2(c)(1). Appellant does not dispute

that the second prong of the cross reference has been met.[1]  The key issue, then, is whether appellant's "offense" involved sexual exploitation of a minor for the purpose of producing a visual depiction under the first prong of § 2G2.2(c)(1).

An "offense," as defined by the Sentencing Guidelines, includes the offense of conviction and all relevant conduct under § 1B1.3, unless a different meaning is otherwise specified.  U.S.S.G. §1B1.1 n.1(l).  Section 1B1.3, in turn, specifies the relevant conduct to be considered in applying cross references.  It provides in pertinent part:

> (a)  ...  Unless otherwise specified, ... (iii) cross references ... shall be determined on the basis of the following:
>
> (1)　(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>　　　(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ....

---

[1]  Appellant's base offense level under § 2G2.1 is 25, which exceeds his adjusted offense level of 22 under § 2G2.2.

U.S.S.G. § 1B1.3(a). Thus the term "offense," when used in a cross reference, includes both the conduct of the defendant *and* certain conduct of other participants in the criminal activity. *United States v. Johnson*, 971 F.2d 562, 575 (10th Cir. 1992) ("[T]he fact that the conduct of an individual other than appellant was used in part to increase appellant's sentence is not inconsistent with the guidelines"). The only exception to this rule is where relevant conduct is "otherwise specified." U.S.S.G § 1B1.3(a). Relevant conduct is "otherwise specified" if a specific guideline contains a more explicit instruction regarding relevant conduct. U.S.S.G. § 1B1.3, comment. (backg'd).

The district court interpreted the cross reference based on relevant conduct as defined by §1B1.3(a). Accordingly, the court considered the conduct of Mr. Tagore's co-conspirators.[2] Appellant contends this was in error. He argues instead that relevant conduct has been "otherwise specified" to include only the defendant's personal conduct. We disagree.

We interpret the Sentencing Guidelines as if they were a statute or a court rule. *United States v. Alessandroni*, 982 F.2d 419, 420 (10th Cir.1992). Where

---

[2] It is undisputed the Appellant did not personally participate in the conduct which triggers use of the §2G2.2(c)(1) cross reference.

the language is clear and unambiguous, it must be followed "except in the most extraordinary situation where the language leads to an absurd result contrary to clear legislative intent." *Id.* at 420-21. The clear and unambiguous language of § 1B1.3 requires cross references to be determined on the basis of reasonably foreseeable conduct of others in furtherance of a jointly undertaken criminal activity.[3] *Johnson*, 971 F.2d at 574-75. Nothing in § 2G2.2 "otherwise specifies" or explicitly instructs a court to consider a more narrow range of relevant conduct. In fact, commentary to § 2G2.2(c)(1) instructs that the cross reference "is to be construed broadly to include all instances where the offense involved [exploitation of a minor for the purpose of creating a visual depiction]." U.S.S.G. § 2G2.2, comment. n.3.

Contrary to appellant's contention, application of § 1B1.3(a) does not lead to an absurd result. The Guidelines allow courts to consider conduct which is not formally charged or is not an element of the offense of conviction. U.S.S.G.

---

[3] Because we find the language is clear and unambiguous, we need not address appellant's argument for application of the rule of lenity. The rule of lenity is applicable only if there is a "grievous ambiguity or uncertainty in the language and structure of the act." *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir.1993) (internal quotation marks and citation omitted), *cert. denied*, 511 U.S. 1057 (1994). Appellant's mere assertion of an alternative interpretation of a sentencing guideline is not enough to bring the rule into play. *United States v. Blake*, 59 F.3d 138, 140 (10th Cir.), *cert. denied*, 516 U.S. 1016 (1995).

1B1.3, comment. Relevant conduct sections such as § 1B1.3 reflect a Guideline judgment that "a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." *Witte v. United States*, 515 U.S. 389, 403 (1995). In this case, consideration of all § 1B1.3(a) relevant conduct reflects the gravity of the activity described in the cross reference – exploitation of a minor for the purpose of creating child pornography.

None of the language relied on by appellant requires a different result. Appellant points to § 2G2.2(b)(4), which requires a five-point enhancement if "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. §2G2(b)(4). Appellant argues that because this section "otherwise specifies" relevant conduct to include only conduct that the defendant personally participated in, the same construction should be applied to the (c)(1) cross reference. Assuming without deciding that Mr. Tagore's interpretation of (b)(4) is correct, it does not affect our interpretation of (c)(1). The language of (b)(4) differs from (c)(1) in several aspects. Section (b)(4) applies if "the defendant" engaged in a pattern of exploitation, whereas (c)(1) applies if "the offense" involved exploitation of a minor for the purpose of producing pornography. We must apply each section by its own clear and

unambiguous terms. *Alessandroni*, 982 F.2d at 420-21. As a result, (c)(1) implicates a broader range of relevant conduct than (b)(4). Such a result is not inconsistent but reflects, as stated above, the Guidelines' judgment that an offense accompanied by exploitation of a minor for the purpose of producing pornography should receive a more serious sentence.

Amendment 372 likewise fails to invoke the "otherwise specified" exception. This Amendment states that the § 2G2.2(c)(1) cross reference applies to "offenses in which the underlying conduct is more appropriately addressed as sexual exploitation of a minor." This statement is not enough to overcome the clear and unambiguous definition of relevant conduct contained in § 1B1.3. The First Circuit addressed a similar argument in *United States v. Carrozza*, 4 F.3d 70 (1st Cir. 1993), *cert. denied*, 511 U.S. 1069 (1994). In that case, the relevant sentencing guideline contained a cross reference based on the "underlying racketeering activity." *Id.* at 75. The district court determined this phrase fell into the "otherwise specified" exception to § 1B1.3. *Id.* at 76. The First Circuit disagreed, holding "the term 'underlying racketeering activity' – contains no explicit instructions displacing the general rule in § 1B1.3 that relevant conduct includes uncharged conduct." *Id.* at 77. Similarly, nothing in the language of §2G2.2(c)(1) or Amendment 372 contains a relevant conduct instruction sufficient

to displace §1B1.3. We therefore hold that the term "offense" in § 2G2.2(c)(1) includes all relevant conduct as defined by § 1B1.3(a).

### III. Application of § 1B1.3(a)(1)(B)

Mr. Tagore argues that even if the district court properly considered the conduct of his co-defendants in applying the cross reference, his co-defendants' conduct was not reasonably foreseeable or in furtherance of a jointly undertaken criminal activity as required under §1B1.3(a)(1)(B). We review the district court's factual findings supporting a base level calculation for clear error. *United States v. Roederer*, 11 F.3d 973, 977 (10th Cir. 1993); *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) ("The district court's finding concerning foreseeability is a factual finding reviewable under a clearly erroneous standard."). We believe the district court's findings are supported by the record and are not clearly erroneous.

Section 1B1.3(a)(1)(B) provides that a defendant may be held accountable for conduct that was both (1) reasonably foreseeable and (2) in furtherance of a jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B). The application notes to § 1B1.3 recognize that relevant conduct for each participant in a jointly

-11-

undertaken criminal activity[4] is not necessarily the same. Therefore, a court must determine the scope of the criminal activity the particular defendant agreed to jointly undertake. U.S.S.G. § 1B1.3, comment. n.2. In determining this scope, the court may consider any "explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Id.* Thus, a court must focus on determining what specific conduct and objectives the defendant either explicitly or implicitly agreed to jointly undertake with the other participants. *Id.* Only conduct of other participants which furthered the *jointly* undertaken criminal activity may be considered as relevant conduct under § 1B1.3(a)(1)(B).

In this case, the district court found the charter drafted by Mr. Tagore constituted an explicit agreement between the parties to facilitate and encourage the making and distribution of child pornography. The court also determined Mr. Tagore was aware exploitation had taken place and was going to take place in the future, and had received and distributed child pornography produced by his co-defendants. The record supports the district court's findings. Chat room conversation transcripts reveal by mid-December 1995, Mr. Tagore was aware

---

[4] A "jointly undertaken criminal activity" includes "a criminal plan, scheme, endeavor or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3, comment n.2.

several of his co-conspirators were exploiting minors, were producing child pornography, and intended to produce more in the future. With this knowledge, Mr. Tagore continued to receive and distribute pornography created by his co-conspirators up to the time of his arrest in June 1996. More importantly, he drafted the charter that provided a protocol for dealing with the homemade pornography and emphasized the necessity of keeping "members only" pornography within the chat room membership. At the time of his arrest, Mr. Tagore possessed pornography produced by his co-conspirators. Disk logs show he gained possession of this pornography as early as December 1995.

Based on this evidence, it was not clearly erroneous to conclude Mr. Tagore could reasonably foresee that his co-conspirators would exploit minors in order to produce pornography. The record also supports a finding that, at the very least, Mr. Tagore implicitly agreed to facilitate and encourage his co-conspirators' production of child pornography. Having thus established the scope of the criminal activity Mr. Tagore agreed to jointly undertake, it was not error for the court to conclude his co-conspirators' exploitive conduct furthered that jointly undertaken criminal activity and therefore was relevant under § 1B1.3.

Mr. Tagore argues the district court's ruling is too broad and could

potentially subject all child pornography traffickers to the § 2G2.2(c)(1) cross reference because all child pornography, by its nature, involves exploitation of minors. We agree mere trafficking of child pornography, by itself, does not necessarily warrant application of the §2G2.2(c)(1) cross reference. This is because, in many cases, the trafficker will not have jointly undertaken a criminal activity (beyond trafficking) with the producer of the pornography and §1B1.3(a)(1)(B) will not be implicated in determining relevant conduct. However, that is not the situation in this case. Mr. Tagore did not merely receive and distribute pornography from anonymous sources. He and his co-conspirators formed a chat room to facilitate the production and exclusive distribution of member-produced child pornography. He authored policies and procedures to further these goals and acted as a "clearing house" for the member-produced pornography. Accordingly, application of the cross reference based on Mr. Tagore's co-conspirators' exploitive conduct was warranted in this case.

IV.  Organizer/Leader Enhancement

Mr. Tagore challenges the district court's application of a four-point enhancement under § 3B1.1(a). Specifically, appellant contends the evidence was insufficient to support a finding that he was a leader or organizer. We review the district court's conclusion that a defendant is a leader or organizer under §

-14-

3B1.1(a) for clear error. *United States v. Cruz Camacho*, 137 F.3d 1220, 1223-24 (10th Cir. 1998).

A defendant qualifies for a four-point enhancement under § 3B1.1(a) if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. §3B1.1(a). To determine whether a defendant was an organizer or leader, the court may consider several factors including

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. n.4. The gravamen of the enhancement is either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime. *United States v. Edwards*, 69 F.3d 419, 439 (10th Cir. 1995) (quoting *United States v. Robertson*, 45 F.3d 1423, 1448 (10th Cir.), *cert. denied*, 515 U.S. 1108 (1995)), *cert. denied*, 517 U.S. 1243 (1996).

As the government correctly points out, the wording of §3B1.1(a) is disjunctive. In other words, an enhancement is appropriate if defendant was either a leader *or* an organizer. A defendant may receive an enhancement as an

organizer for "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1272 (10th Cir. 1997). It is not necessary to find the defendant exercised control over other participants to qualify for an organizer enhancement. *Id.*

In this case, the record supports the district court's finding that appellant acted, at the very least, as an organizer of the conspiracy.[5] Mr. Tagore authored a charter that established the chat room name and location, a three-tiered membership system, the process for admitting new members, rules for maintaining secrecy, protocol for dealing with "member only" pornography, and chat room goals. Mr. Tagore operated an important ftp site through which he coordinated distribution of the members' pornography and provided members with copies of previously distributed pornography. Mr. Tagore also coordinated approval of new chat room members. Based on this evidence, we agree with the district court's observation that Mr. Tagore's role was critical to the success of the organization. Accordingly, we hold that the district court did not err in enhancing Mr. Tagore's

---

[5] Because we find the an enhancement was appropriate for appellant's role as an organizer, we do not address appellant's arguments concerning his role as a leader of the conspiracy.

sentence pursuant to §3B1.1(a).

The judgment of the district court is **AFFIRMED**.