**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GEORGE JARVIS MITCHELL,

Defendant-Appellant.

No. 99-6198
(W. District of Oklahoma)
(D.C. No. CR-98-93-T)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

## I.  INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In June of 1998, a federal grand jury sitting in the Western District of Oklahoma handed down a multi-count indictment relating to a large drug conspiracy operating out of Elk City, Oklahoma. George Jarvis Mitchell was named in eleven counts of the indictment. The indictment charged Mitchell with one count of conspiracy to distribute cocaine base, one count of maintaining a place for the distribution and use of a controlled substance, two counts of possession of cocaine base with intent to distribute, and numerous counts of distribution of cocaine base. Mitchell eventually pleaded guilty to a single count of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1).

The district court determined that Mitchell had a base offense level of 37 and a criminal history category of III, resulting in a guideline range for imprisonment of 262 to 327 months. The district court imposed a sentence of 262 months. In order to calculate Mitchell's base offense level pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(a)(3) and (c), the district court held a hearing to determine the amount of drugs attributable to Mitchell. The district court ultimately concluded that 911.29 grams of cocaine base were attributable to Mitchell, resulting in a beginning base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). The district court then increased the base offense level four levels after concluding that Mitchell was an organizer or leader of a criminal activity that involved five or more participants. *See id.* § 3B1.1(a). After

reducing Mitchell's base offense level three levels for acceptance of responsibility, *see id.* § 3E1.1(a) & (b), the district court arrived at a final base offense level of 37.

On appeal, Mitchell raises the following two challenges to the district court's calculation of his base offense level: (1) the district court erred in attributing 911.29 grams of cocaine base to him for purposes of U.S.S.G. § 2D1.1 and (2) the district court erred in concluding that "Mitchell was a leader or organizer of five or more participants in this offense." In addition to the two sentencing-related challenges, Mitchell belatedly asserted at the sentencing hearing that the district court had erred in accepting his plea. According to Mitchell, the plea was not knowingly entered. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and **affirms**.

## II. ANALYSIS

### A. SECTION 2D1.1(c) DRUG QUANTITY CALCULATIONS

After a consolidated drug quantities hearing, held for the purpose of apportioning and attributing drug quantities among the numerous participants in this drug enterprise, the district court found that Mitchell was responsible for 911.29 grams of cocaine base. The drugs attributed to Mitchell by the district

court fall into the following categories: (1) 17.45 grams[1] obtained from Mitchell through "controlled purchases" over an approximately three-month period between October of 1997 and January of 1998; (2) 4.09 grams obtained during the execution of a search warrant at Mitchell's residence; (3) 29.47 grams obtained from the execution of a search warrant at the home of Regina Evans[2]; (4) 576.78 grams witnessed by Evans; (5) 255.15 grams witnessed by Vicky Edmondson; and (6) 28.35 grams retrieved from Evans' home by Mitchell's accomplices, at Mitchell's direction, while Mitchell was incarcerated. Mitchell asserts that the government failed to present sufficient evidence to support any amounts except those in categories (1) and (2).

This court reviews a district court's drug quantity calculations for clear error. *See United States v. Cruz Camacho*, 137 F.3d 1220, 1225 (10th Cir. 1998). The district court may rely upon estimates to establish a defendant's base offense level when the actual drugs underlying a drug-quantity determination are not seized. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996).

---

[1]In his appellate brief, Mitchell asserts that the total amount of cocaine base resulting from controlled purchases is 15.06 grams. A review of paragraphs thirteen through seventeen of the Presentence Report ("PSR"), portions of the PSR which Mitchell admits are accurate, demonstrates that the correct total is 17.45 grams.

[2]As set out more fully below in section II.B. of this opinion, Mitchell exerted substantial control over Evans and her home, and used the home extensively as a place to distribute cocaine base.

"The government must prove the quantities of drugs for sentencing purposes by a preponderance of the evidence and the evidence relied upon must possess a minimum indicia of reliability." *Cruz Camacho*, 137 F.3d at 1225.

The applicable Sentencing Guidelines provision sets a base offense level of 36 for any quantity of cocaine base between 500 grams and 1.5 kilograms. *See* U.S.S.G. § 2D1.1(c)(2). Therefore, any error in the district court's findings as to attributable drug quantities are harmless unless Mitchell successfully challenges enough of the evidence to reduce the total to less than 500 grams. Because this court concludes that the 576.78 grams the district court extrapolated from the statements of Evans are adequately supported by the record, we need not consider any of the other drug quantities challenged by Mitchell.

The testimony before the district court regarding the quantity of cocaine base attributable to Mitchell from sales at Evans' residence came primarily from the testimony of Federal Bureau of Investigation Special Agent Nick Manns. Manns testified that he spoke with Evans following the execution of the search warrant at her residence on March 10, 1998. Manns testified that he advised Evans of her *Miranda* rights and that she agreed to waive those rights and speak to him. Evans admitted that Mitchell had been selling cocaine base from her home in return for money and drugs. Evans further indicated that Mitchell had sold drugs out of her home on at least fifty separate occasions, with numerous

sales occurring on each occasion. Manns opined, based on his investigation, that fifty occasions was a conservative number. Based on the statements of Evans and others, Manns further testified that, viewed conservatively, Mitchell sold at least one-half of an ounce of cocaine base on each of these fifty occasions. To avoid the potential of double counting quantities of drugs included in category (5), those amounts witnessed by Edmondson, Manns reduced the total number of occasions to forty-four. Manns testified that the selling of one-half of an ounce of cocaine base on forty-four occasions resulted in a total amount of 623 grams. Manns then subtracted those quantities included in categories (1) and (3), resulting in a conservative estimate of 576.78 grams.

Citing three decisions of this court, Mitchell asserts that the district court erred in relying on the out-of-court statements made by Evans to Manns because those statements were vague and uncorroborated. *See United States v. Fennell*, 65 F. 3d 812, 813-814 (10th Cir. 1995) (noting that unsworn, uncorroborated, out-of-court statements are not favored in sentencing proceedings); *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993) (same); *see also United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (holding that drug quantities for sentencing purposes can be based on estimates but noting that such estimates cannot be based on vague, uncorroborated testimony or guesswork). The problem with Mitchell's argument, and his citation of these cases, is that the record in this

case contains ample corroboration as to both the number of occasions that he sold cocaine base from Evans' residence and the quantity of drugs sold on those occasions.

In particular, Dennis Reed told investigators that he had picked up Mitchell in Altus, Oklahoma, on at least seven occasions with one-ounce quantities of cocaine base and returned with him to Elk City. Reed observed Mitchell sell cocaine base from Evans' residence "hundreds of times." Kelvin Bagby told investigators that he had purchased cocaine base from Mitchell "over 1,000 times." John Nunn told investigators that he observed Mitchell sell cocaine base from Evans' residence "hundreds of times." David Sharp indicated that he purchased cocaine base from Mitchell ten to twelve times each month for almost one year. Corey Wilson indicated that Mitchell brought at least one-half ounce of cocaine base to Evans' residence to sell on at least a weekly basis. Patrick Brown indicated that he made fifteen to twenty trips to Altus, Oklahoma, to pick up drugs with Mitchell and that Mitchell obtained at least one-half ounce on each trip. Finally, Manns described the contents of a video recording made in the investigation. In the video, Mitchell is observed measuring out at least one ounce of crack cocaine. Mitchell described in detail how much money he would make selling the ounce.

Evans' statements, corroborated by the statements of Mitchell's co-conspirators and accomplices, is sufficiently reliable and case specific to support the district court's attribution of at least 500 grams of cocaine base to Mitchell. *See United States v. Wacker*, 72 F.3d 1453, 1377 (10th Cir. 1995) (holding that district court may consider relevant information without regard to its admissibility under the rules of evidence "so long as the information relied upon has some basis of support in the facts of the particular case, and bears sufficient indicia of reliability" (quotation omitted)). Accordingly, the district court did not commit clear error in its drug quantity calculations and did not err in setting Mitchell's base offense level by reference to U.S.S.G. § 2D1.1(c)(2).

B. SECTION 3B1.1 LEADER OR ORGANIZER ADJUSTMENT

Mitchell challenges the district court's four-point upward adjustment of his base offense level pursuant to § 3B1.1(a). Mitchell's argument is two-fold: (1) the government failed to carry its burden of proving that he exercised control or decision-making authority over any of his accomplices and (2) even assuming the government did prove that he exercised control or decision-making authority over some of his accomplices, it did not prove that he exercised such authority over *five* of his accomplices. This court reviews questions of law regarding application of the Sentencing Guidelines *de novo*. *See United States v. Tagore*, 158 F.3d 1124, 1127 (10th Cir. 1998). We review a district court's findings of

fact, including its ultimate finding Mitchell was a leader or organizer under § 3B1.1(a), for clear error. *See id.* at 1130.

Mitchell qualifies for a four-point upward adjustment under § 3B1.1 if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Mitchell is clearly wrong in asserting that the government must prove that he controlled five of his accomplices before a § 3B1.1(a) adjustment is applicable. *See Cruz Camacho*, 137 F.3d at 1224 ("The government does not have to prove that defendant controlled five or more participants. Instead, it must prove that five persons participated in the criminal venture, and that defendant exercised leadership control over at least one person." (footnote omitted)). It is uncontested that the criminal activity at issue in this case involved more than five participants. Accordingly, Mitchell can demonstrate that the district court clearly erred in adopting a § 3B1.1 adjustment only by showing that the evidence adduced at the sentencing hearing is insufficient to demonstrate that he exercised

control or decision-making authority over any of his accomplices.[3]  This he cannot do.

To determine whether a defendant qualifies for a § 3B1.1 adjustment, the court may consider several factors, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. S 3B1.1, comment. n. 4.  In this case, the record supports the district court's finding that Mitchell exercised control over Regina Evans.  The record reveals that shortly after Mitchell arrived in Elk City, the locus of this particular drug conspiracy, he became aware that Evans' home was a convenient spot for the distribution of cocaine base.  Mitchell recruited Evans for the purpose of allowing him to sell drugs from her home, paying her with both drugs and money.  Over time, Mitchell began to exert greater control over both Evans and her residence.

---

[3]That is not to say, however, that a finding of control is always necessary to support an adjustment under § 3B1.1(a).  *See United States v. Tagore*, 158 F.3d 1124, 1131 (10th Cir. 1998) ("[T]he wording of § 3B1.1(a) is disjunctive.  In other words, an enhancement is appropriate if defendant was either a leader *or* an organizer. . . .  It is not necessary to find the defendant exercised control over other participants to qualify for an organizer enhancement.").  Because the evidence adduced at the sentencing hearing was sufficient to support the conclusion that Mitchell was a leader of the drug conspiracy, this court need not consider whether Mitchell would also qualify as an organizer.  *See id.*

In fact, Evans' residence eventually became known as "G's"[4] house. At this point, Mitchell took control of who could sell drugs in the house while he was present and began to recruit others, Kore Wilson for example, to sell drugs from the residence. The evidence at sentencing also indicates that Mitchell received a disproportionate share of the proceeds of the drug transactions occurring in Evan's residence. This evidence is certainly sufficient to support both the district court's finding that Mitchell exercised leadership control over Evans[5] and its four-level upward adjustment of Mitchell's base offense level pursuant to § 3B1.1(a).

## C. KNOWING PLEA

Mitchell asserts that the district court erred in denying his oral motion to withdraw his guilty plea, which motion was made at the conclusion of the sentencing hearing and right before the district court was to enter a sentence. As the sole ground in support of his motion, Mitchell asserted that his plea was not knowing and voluntary. In particular, Mitchell asserted that (1) he was unaware drug quantities outside his offense of conviction would be used to calculate his

---

[4]"G" was Mitchell's street alias.

[5]Although the record evidence regarding Mitchell's control of Evans and her residence is sufficient, standing alone, to support the enhancement, this court notes that a review of the record demonstrates similar support for the district court's conclusion that Mitchell exercised control over Patrick Brown, Dennis Reed, Kore Winston, and Eric Hughes.

sentence under the Sentencing Guidelines, (2) he thought he would be eligible for probation, and (3) his attorney did not visit him often or keep him informed about his case. This court reviews *de novo* the question whether a guilty plea was knowing and voluntary. *See United States v. Libretti*, 38 F.3d 523, 529 (10th Cir. 1994).[6]

The record in this case demonstrates that Mitchell's plea was knowing and voluntary. During the plea hearing, the district court patiently and meticulously explained to Mitchell that he likely faced a very long prison sentence and that the exact length of that sentence could not be computed until after a hearing to determine the amounts of drugs attributable to Mitchell for purposes of the Sentencing Guidelines. The district court further explained that "it's very important for you to know that nobody can give you any assurance of what your

_____

[6]Although this court reviews the question whether a plea is knowing and voluntary *de novo*, we review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion, considering those seven factors set out in *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993). *See United States v. Carr*, 80 F.3d 413, 419 (10th Cir. 1996). Because the sole basis for Mitchell's oral motion to withdraw his guilty plea was that the plea was not knowing and voluntary, the other six *Gordon* factors are not at play in this appeal. Nevertheless, we note that after reviewing the entire record in this case, with special emphasis on the petition to enter guilty plea, plea agreement, plea hearing, and the sentencing hearing, it is clear that the district court did not abuse its discretion in denying Mitchell's motion. In particular, this court notes that Mitchell has never asserted his innocence and that granting the dilatory motion would have prejudiced the government, inconvenienced the court, and wasted judicial resources. *See Gordon*, 4 F.3d at 1572.

sentence will be because nobody has been able to compute it yet." In response to a question from the district court, Mitchell stated that he understood that nobody could make him any guarantees about his sentence and that he likely faced a substantial prison term. Mitchell further indicated that he freely entered into the plea agreement with the government, that his attorney had explained the contents and consequences of the plea agreement, and that he "understood everything" in the plea agreement. When viewed against the record of the plea hearing and the contents of the petition to enter guilty plea, Mitchell's self-serving and conclusory assertions regarding his plea are, standing alone as they do, clearly insufficient. *See Blackledge v. Allison*, 431 U.S. 63, 74, (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations . . . is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Upon *de novo* review, this court holds that the district court did not err in concluding that Mitchell's guilty plea was knowing and voluntary or in denying Mitchell's oral motion to withdraw his guilty plea on that ground.

### III. CONCLUSION

For those reasons set out above, the judgment of conviction and sentence entered in this case by the United States District Court for the Western District of Oklahoma are hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge