UNITED STATES of America,
Plaintiff,

v.

Dennis L. McCLATCHEY, Defendant.

No. 98–20030–JWL.

United States District Court,
D. Kansas.

Aug. 31, 2001.

---

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

A jury convicted Dennis McClatchey of conspiracy to violate the Medicare Anti–Kickback Act ("the Act") by offering and paying bribes to Drs. Robert C. and Ronald H. LaHue for the referral of Medicare and Medicaid-eligible nursing home patients to Baptist Medical Center ("Baptist"), in violation of 18 U.S.C. § 371, and of violating or aiding and abetting violations of the Act by knowingly and willfully offering and paying remuneration in return for such referrals, in violation of 42 U.S.C. § 1320a–7b and 18 U.S.C. § 2. The court granted Mr. McClatchey's motion for judgment of acquittal, finding that the evidence presented at trial was insufficient to support a conviction for either offense because "the evidence was insufficient as a matter of law to support a jury finding beyond a reasonable doubt on the element of intent." The Tenth Circuit reversed, holding that "the evidence supports a reasonable inference that McClatchey would never have supported negotiating and entering into [the 1993 contract between Baptist and the Drs. LaHue] absent his intent to induce the LaHues to continue referring their patients to Baptist." *United ed States v. McClatchey,* 217 F.3d 823, 830 (10th Cir.2000). The circuit, on the other hand, agreed with the district court that "no reasonable jury could find beyond a reasonable doubt that McClatchey specifically intended to violate the Act based on the evidence of his involvement, or noninvolvement, in the 1985 contract, the 1986 contract, and the loan of Eckard to [the Drs. LaHue]. . . ." *Id.* at 829. The court must now sentence Mr. McClatchey pursuant to the Tenth Circuit's decision.

The parties have raised multiple objections to the Presentence Investigation Report ("PSIR"). The court conducted a telephone conference with counsel on June 21, 2001, to establish procedure for briefing and ruling on the objections. The court has before it the parties' objections, sentencing memoranda and responses and, with the consent of the parties to decide certain objections on the papers, will now rule on the objections which the parties have indicated do not require the presentation of additional evidence at the sentencing hearing. In evaluating those objections that require findings of fact or present mixed questions of law and fact, the court bases its rulings on the evidence presented at trial. To the extent that either party believes that the court should have deferred ruling on an issue until the sentencing hearing scheduled for September 17, 2001, that party should file a motion to reconsider within ten days of the date of this order. Based on the June 21, 2001, telephone conference and a review of the papers, the court believes that it is appropriate to reserve a decision on the defendant's request for departure until the sentencing hearing but that all other objections can be resolved on the papers.

● The offense conduct

The government objects to the PSIR description of the offense conduct, arguing

that it is "incomplete, inconsistent, and inaccurate, contains irrelevant information, and fails to recognize that in reversing the District Court, the Tenth Circuit Court of Appeals rejected many of the District Court's factual findings with regard to McClatchey." The government also asserts that the offense conduct description contains both factual and legal findings and "only facts are relevant to the Offense Conduct section." Finally, the government argues that the preponderance of the evidence standard at sentencing "necessitates more expansive factual findings" and suggests that the court adopt the proposed version of the offense in the government's sentencing memorandum filed in connection with the sentencing of the Drs. LaHue and Dan Anderson.

The defendant objects to the offense conduct description on the basis that "much of the information contained in the statement of offense conduct is irrelevant to Mr. McClatchey." According to the defendant, because the Tenth Circuit only reversed this court's judgment of acquittal with respect to the 1993 contract, the only relevant conduct "is his conduct relating to the actual negotiations for the 1993 contract."

The court previously sustained an objection to the version of the offense that the government now suggests that the court adopt, finding that the version of the offense description was inaccurate. *United States v. Anderson*, 85 F.Supp.2d 1084, 1103 (D.Kan.1999). In its place, the court adopted the findings of facts set out in its July 21, 1999 Memorandum and Order. *Id.* The court also rejected the government's argument that the findings of fact in the July 21, 1999 Memorandum and Order were insufficient because a preponderance of the evidence standard required broader findings of facts. *Anderson*, 85 F.Supp.2d at 1113–14. The court ruled that the findings of fact in the July 21,

1999 Memorandum and Order "sets out the facts as [the court] believes they exist under any standard of proof." *Id.* at 1114. The government has not provided the court with a reason to reconsider these earlier rulings.

The Tenth Circuit decision did not reject any of the court's factual findings. Instead, the circuit court rejected the court's legal conclusion that the facts do not support a jury finding beyond a reasonable doubt on the element of intent with regard to the 1993 contract. 217 F.3d at 829–30. In reaching this legal conclusion, the court reviewed the evidence presented at trial and pointed to evidence that "reveals three important aspects of McClatchey's knowledge which inform on his intent." 217 F.3d at 830. The evidence discussed by the circuit court is included in the offense conduct description at paragraph 61. Nothing else needs to be added to the offense conduct description in light of the Tenth Circuit decision.

■ The government's objection that the offense conduct description inappropriately contains legal conclusions as well as findings of fact is meritless. The government did not point to any such legal conclusions in its papers and the court does not find any legal conclusions in the description. The court also rejects the defendant's argument that the offense conduct description contains irrelevant information. Information in the description about the conduct of the Drs. LaHue and Mr. McClatchey's involvement with the 1985 contract, the 1986 contract and Mr. Eckard, while not the conduct for which Mr. McClatchey was convicted, provides background for and completes the picture of the conduct for which Mr. McClatchey was convicted. The court believes that the information is relevant and appropriately included in the offense conduct description. *See, e.g., United States v. Zitel-*

*lo,* 1993 WL 62394, *2 (N.D.Ill. Feb.17, 1993) (holding that it is appropriate to include information about co-conspirators in the PSIR where the description distinguishes the co-conspirators and accurately describes the defendant's role in the offense).

● The appropriate Guidelines Manual

The government points out that under the 2000 edition of the United States Sentencing Commission Guidelines Manual ("the Guidelines"), a four-level enhancement is appropriate where there are a large number of vulnerable victims. The defense responds by arguing that use of the 2000 edition would violate the Ex Post Facto Clause of the Constitution. The court need not decide the issue in this context because no enhancement based on the type or number of victims is appropriate. The court has previously ruled that the government failed to show that any patients suffered actual or intended harm or loss and, thus, failed to show that there were any "victims" pursuant to section 3A1.1. *Anderson,* 85 F.Supp.2d at 1091–93. As explained below, the court's prior ruling is the law of the case.[1]

● Calculating the value of the bribe

The government objects to the PSIR calculation of the value of the bribe as $50,000. According to the PSIR, $150,000 was paid to the Drs. LaHue under the 1993 contract and $50,000 of that amount constituted a bribe. This calculation is consistent with the court's previous rulings. In sentencing Mr. McClatchey's co-defendants, the court found that the Drs. LaHue provided services to Baptist valued at $100,000 per year and that because Baptist paid the LaHues $150,000 per year, $50,000 constituted a bribe. Sentencing Trans. at 527–530.

The government argues that more than one year of payments should be counted towards the value of the bribe. According to the government, the Tenth Circuit opinion "repeatedly stated that defendant McClatchey's involvement in the conspiracy included the negotiations of the 1993 contract, which began in 1991." Thus, the government argues, the value of the bribe should be calculated by including payments made to the Drs. LaHue in 1991 and 1992. The government also argues that the value of the bribe should include all bribes and remunerations paid to the Drs. LaHue because Mr. McClatchey's guilt as to these bribes and remunerations has been proven by a preponderance of the evidence and because Mr. McClatchey should be held liable for acts of co-conspirators.

The defendant objects to the $50,000 calculation of the value of the bribe on the basis that only $137,500 total in payments were made under the 1993 contract. The defendant argues that, based on the court's conclusion that $100,000 was paid for services performed by the Drs. LaHue over the course of one year, only $37,500 constitutes a bribe.

Section 2B4.1 provides that the defendant's base offense level is to be increased based on the value of the bribe or the improper benefit to be conferred. The Tenth Circuit reversed the district court's judgment of acquittal with regard to the 1993 contract only. Thus, the court may only increase Mr. McClatchey's base offense level based on bribes paid under the 1993 contract and based on relevant conduct found by a preponderance of the evidence. U.S.S.G. § 1B1.3(a).

The government argues that the court should find, as relevant conduct, that Mr. McClatchey offered or paid bribes and re-

---

1. See section IV, victim impact statement and vulnerable victim enhancement.

muneration to the Drs. LaHue in addition to the bribes paid under the 1993 contract, or aided and abetted the same. The court has already found that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that Mr. McClatchey is guilty of these other crimes. The court previously characterized the evidence relevant to the intent element of these crimes as creating "at most a suspicion of guilt." Upon a review of the evidence, viewed under a preponderance of the evidence standard, the court is not persuaded that Mr. McClatchey possessed the intent element with regard to allegations other than the 1993 contract. A detailed discussion of this evidence was set out in the order granting the judgment of acquittal.

■ The government also argues that other bribes and remunerations paid to the Drs. LaHue should be considered relevant conduct because they were reasonably foreseeable acts taken by others in furtherance of a jointly undertaken criminal activity. Pursuant to section 1B1.3(a)(1)(B), Mr. McClatchey's base offense level may be increased based on reasonably foreseeable acts of others taken in furtherance of the scheme to pay bribes through the 1993 contract. His offense level may not be increased based on acts taken in furtherance of crimes other than paying bribes under the 1993 contract because Mr. McClatchey only agreed to jointly undertake the crime of paying bribes under the 1993 contract.

In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.* the scope of the specific conduct and objectives embraced by the defendant's agreement).... In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake ..., the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others.

U.S.S.G. § 1B1.3, cmt. 2; *see also United States v. Tagore*, 158 F.3d 1124, 1130 (10th Cir.1998) ("a court must focus on determining what specific conduct and objectives the defendant either explicitly or implicitly agreed to jointly undertake with the other participants."); *United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir. 1997) ("In making this determination, the court must keep in mind that 'the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy.' Proper attribution at sentencing requires the district court to analyze, and make 'particularized findings' about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole.") (citations omitted). The court finds that the evidence presented at trial showed, by a preponderance of the evidence, that Mr. McClatchey agreed only to jointly undertake the crime of paying bribes through the 1993 contract. To hold Mr. McClatchey liable for bribes and remunerations other than the 1993 contract, therefore, requires showing these other bribes and remunerations were paid in furtherance of the scheme to pay bribes through the 1993 contract, a proposition not supported by the evidence. Mr. McClatchey's base offense level, therefore, will not be increased for conduct other than bribes paid under the 1993 contract.

■ The defendant claims that only $137,500 of the $150,000 due under the 1993 contract was actually paid to the Drs. LaHue because a "makeup" payment in 1994 was "done in connection with the 1994 contract, a matter in which Mr. McClatchey had no involvement at all ...." and not pursuant to the 1993 contract. The

court has previously ruled that the value of the actual services rendered by the Drs. LaHue was $100,000 per year. If the defendant is correct, subtracting the value of the actual services rendered, the total bribe actually paid under the 1993 contract was $37,500. Section 2B4.1 provides that the defendant's base offense level is to be increased by "the greater of the value of the bribe or the improper benefit to be conferred." The parties have agreed that the value of the bribe and not the improper benefit to be conferred is the proper calculation. The issue, then, is whether the value of the bribe is the amount agreed upon in the 1993 contract or the amount actually paid under the contract. If it is the amount agreed upon, then the court need not determine the amount actually paid under the 1993 contract.

The court holds that the value of the bribe is calculated by beginning with the agreed upon payment of $150,000, not the amount actually paid. Both offering and paying a bribe are prohibited by the Act. 42 U.S.C. § 1320a–7b. If the "value of the bribe" is interpreted as the amount actually paid, a defendant's base offense level would not be increased in cases where the defendant offers a bribe, but does not actually pay. The Guidelines do not indicate that a sentence should be less where a defendant offers a bribe, but does not pay. Such a result would reward a criminal who offers a bribe, gets a benefit and then cheats the intended recipient of the bribe. The commentary to section 2C1.1, applicable to bribery of public officials, addresses this issue: "Offenses involving attempted bribery are frequently not completed because the victim reports the offense to authorities or is acting in an undercover capacity. Failure to complete the offense does not lessen the defendant's culpability...." For this reason, the court does not believe that the Sentencing Commission intended that a defendant who offers a bribe, but does not pay, should receive a lesser sentence than a defendant who actually pays a bribe. *Cf. United States v. Cohen,* 171 F.3d 796, 804 (3d Cir.1999) (holding that the value of improper benefit to be conferred includes "any benefit that the briber expected to receive at the time he paid the bribe, even if he did not ultimately receive it."). In the same respect, the Commission surely did not intend that a defendant who offers a bribe but cheats the intended recipient by not paying, or paying less than the agreed upon bribe, should receive a lesser sentence. Thus, the court concludes that the $150,000 in payments agreed to in the contract is the controlling figure, not the amount actually paid. The value of the bribe, therefore, was $50,000 no matter what amount was actually paid under the contract. The defendant's objection is overruled.

● Adjustment for role in the offense

 The government argues for an enhancement based on Mr. McClatchey's role in the offense and the defendant argues for a downward adjustment. The Introductory Commentary to Chapter 3, Part B, says that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of section 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts in the count of the conviction." Thus, the court may consider Mr. McClatchey's involvement in the 1993 contract as well as any relevant conduct. As explained above, the court holds that the government has not proven any relevant conduct by a preponderance of the evidence. Thus, Mr. McClatchey's role in the offense must be analyzed in the context of the 1993 contract only. The burden is on the government to prove, by a preponderance of the evidence, the facts necessary to establish that Mr. McClatchey's role in the offense justifies an enhancement. *United States v. Torres,* 53 F.3d 1129, 1142 (10th

Cir.1995). Likewise, the burden is on the defendant to prove that he is entitled to a downward adjustment. *United States v. Garcia,* 987 F.2d 1459, 1461 (10th Cir. 1993).

 The government's argument for an enhancement is based almost entirely on Mr. McClatchey's role in other offenses for which he was acquitted and which this court holds are not relevant conduct. With regard to the 1993 contract, the government asserts that Mr. McClatchey supervised two Baptist employees and was in charge of negotiating the contract on behalf of Baptist. The court overrules the government's objection and holds that the evidence presented at trial did not persuade the court, by a preponderance of the evidence, that Mr. McClatchey was a leader, manager, supervisor or organizer of the crime.

 An enhancement under a "leader," "manager," or "supervisor" theory requires a showing that the defendant had "control over others" in the criminal conspiracy. *United States v. Valdez–Arieta,* 127 F.3d 1267, 1272 (10th Cir.1997). The government argues that Mr. McClatchey exercised control over Kevin McGrath, a Baptist employee, and Mark Thompson, an attorney representing Baptist. While there is evidence indicating that Mr. McClatchey exercised control over Mr. McGrath and, arguably, Mr. Thompson, the court is not persuaded that Mr. McGrath or Mr. Thompson were participants in a criminal conspiracy. "To qualify for an adjustment under [section 1B1.3], the defendant must have been the leader, manager, or supervisor of one or more other participants." U.S.S.G. § 1B1.3 cmt. 2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 1B1.3 cmt. 1. In arguing for an enhancement, the government asserts that there were five members of the conspiracy

to pay bribes to the Drs. LaHue in addition to Mr. McClatchey: Ronald and Robert LaHue, Dan Anderson, Tom Eckard, and Ronald Keel. To the extent that Mr. McGrath and Mr. Thompson are not included as participants, the court agrees. The court disagrees with the government's list of participants because only the conspiracy to pay bribes through the 1993 contract is relevant to sentencing, not the broader conspiracy. Evidence presented at trial did not show that Ronald Keel and Tom Eckard, the only two individuals over whom Mr. McClatchey arguably could exercise control, were participants in the narrow conspiracy to pay bribes through the 1993 contract. Mr. McClatchey, therefore, did not have control over other participants and an enhancement is not appropriate for a role as a leader, manager or supervisor.

 The court recognizes that to be an organizer, a defendant need not have control over a participant. *United States v. Tagore,* 158 F.3d 1124, 1131 (10th Cir. 1998). "A defendant may receive an enhancement as an organizer for 'devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy.'" *Id.* The court has previously found that Robert LaHue solicited bribes from Baptist and that Dan Anderson, on behalf of Baptist, directed that the bribes be paid. The evidence presented at trial showed that Mr. McClatchey did not devise the scheme to pay bribes through the 1993 contract. The contract was merely a continuation of the scheme to pay bribes that was masterminded by Robert LaHue and Dan Anderson. The evidence also did not show by a preponderance of the evidence that Mr. McClatchey was necessary to accomplish the scheme's objectives. Mr. McClatchey played a limited role in im-

plementing the scheme and the court is persuaded that the scheme would have succeeded without Mr. McClatchey's involvement. Thus, the court concludes that Mr. McClatchey did not provide the wherewithal to accomplish the scheme's objective. The court has previously found that Mr. Anderson and Robert LaHue coordinated the implementation of the scheme. Mr. McClatchey had the limited role of overseeing the conclusion of the contract negotiations; he did not coordinate the scheme to pay bribes through the contract. The court, therefore, holds that Mr. McClatchey was not an organizer of the crime and that no enhancement for his role in the offense is appropriate.[2]

The defendant argues for a downward adjustment for Mr. McClatchey's role in the offense. The defendant agrees that any adjustment under section 3B1.2 should be analyzed in the context of the 1993 contract only and argues that Mr. McClatchey was a minimal or minor participant in the contract negotiations. The commentary to section 3B1.2 explains that a minimal participant adjustment should be used infrequently and applies only to a participant who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. 1. A defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* A minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. 3. Deciding whether a defendant is a minor or minimal participant "involves a determination that is heavily dependent upon the facts of the particular case." *Id*

The defendant points out that this court found that Mr. Anderson and Robert La-

Hue were the organizers of the scheme and that Mr. Anderson ordered the payment to the Drs. LaHue under the 1993 contract and personally executed the contract. The defendant also points to government exhibits and trial testimony by Mr. McClatchey showing that substantial work had been done on formulating the terms of the contract prior to Mr. McClatchey's involvement. According to the defendant, even after he became involved, the Baptist lawyers controlled the negotiations. The government, on the other hand, points to admissions made by Mr. McClatchey at trial as evidence that he was more than a minimal or minor participant. The government points out that, at trial, Mr. McClatchey admitted that he was personally responsible for bringing the contract negotiations to a close following the FBI visit to Baptist. He also admitted that he was involved in discussions with other Baptist decision-makers about the relationship between Baptist and the Drs. LaHue. Other evidence cited by the government of Mr. McClatchey's involvement goes to his role in the larger conspiracy, not the 1993 contract.

After reviewing the record, the court concludes that Mr. McClatchey was more than a minimal participant. He understood the relationship between Baptist and the Drs. LaHue as well as the roles played by others in facilitating the relationship. According to the commentary to section 3B1.2, this indicates that Mr. McClatchey was not a minimal participant. Mr. McClatchey was in charge of successfully concluding the contract negotiations on behalf of Baptist. The jury found Mr. McClatchey guilty and the Tenth Circuit held that the evidence supported an inference that Mr. McClatchey supported negotiating and entering into the 1993 contract with the intent to induce the Drs. LaHue

---

2. The court, therefore, need not address the defendant's argument that it should extend the holding of *Apprendi* to enhancements under the Guidelines.

to continue referring patients to Baptist, knowing that it was in violation of the Act. Mr. McClatchey was not, in the opinion of the court, "plainly among the least culpable of those involved" in the offense and was not a minimal participant.

The court also holds that Mr. McClatchey was not a minor participant. While Mr. McClatchey is less culpable than Mr. Anderson and Robert LaHue, this alone does not entitle him to a minor participant adjustment. *United States v. Caruth,* 930 F.2d 811, 815 (10th Cir.1991) (being less culpable than co-defendants does not necessarily entitle a defendant to a minimal or minor participant adjustment). In deciding whether a defendant is a minor participant, "the Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in the same crime." *Id.* In this case, the court believes that Mr. McClatchey has failed to show that he is less culpable than an average participant in a scheme to violate the Act or that he was less culpable than Ronald LaHue, another participant in the scheme. While Mr. McClatchey did not devise the scheme or participate in the day-to-day decisions regarding the contract negotiation, he was responsible for supervising and concluding the contract negotiations. He did so, according to the jury and Tenth Circuit, despite knowing that the payments made pursuant to the contract were in violation of the Act. As the court has previously explained, Ronald LaHue played a similar role in that he was not a leader, manager, supervisor or organizer but had some limited involvement in contract negotiations and some limited decision-making authority. Based on this evidence, the court concludes that although Mr. McClatchey is less culpable than Mr. Anderson and Robert LaHue, he is not less culpable than Ronald LaHue or the average defendant in a scheme to violate the Act. The court

holds that the defendant has not met his burden of showing that Mr. McClatchey was a minimal or minor participant and the defendant's objection is overruled.

● Fine

The government objects to the applicable fine range in the PSIR. The fine range is determined by the total offense level, U.S.S.G. § 5E1.2, and the court assumes that the government's objection is based on its earlier arguments for a higher offense level. Because the court rejects the government's arguments for a higher offense level, the government's objection to the fine range is also overruled.

● Victim impact statement and vulnerable victim enhancement

The government argues that the victim impact statement is incomplete and that an enhancement should be given because the defendant knew or should have known that the victims of the offense were vulnerable. The objections are overruled for the same reasons that the court previously rejected the government's argument. *Anderson,* 85 F.Supp.2d at 1091–93.

● Downward departure

The defendant argues for a downward departure based on extraordinary family circumstances, aberrant behavior, acceptance of responsibility and a combination of the three factors. The court will retain this argument under advisement pending evidence to be presented at the sentencing hearing in support of and in opposition to departure based on these three factors.

The court notes that neither party addresses in their papers the issue of whether section 5K2.20, effective on November 1, 2000, applies to Mr. McClatchey. Prior to section 5K2.20, circuits were split on the issue of whether an aberrant behavior departure required a spontaneous and thoughtless act or could apply to one which required substantial planning. In the Tenth Circuit, the fact

that a crime was not spontaneous but involved substantial planning did not preclude a departure for aberrant behavior. *United States v. Garcia*, 182 F.3d 1165, 1176–77 (10th Cir.1999). Section 5K2.20 resolved the conflict and establishes that the aberrant behavior departure applies only to a single criminal occurrence or single criminal transaction that was committed without significant planning and was of limited duration. *United States v. Farnsworth*, 92 F.3d 1001, 1007 (10th Cir. 1996) ("Commentary interpreting the sentencing guidelines is binding on the federal courts unless it violates the Constitution or a federal statute, or is inconsistent with the guideline it interprets."). Mr. McClatchey committed these offenses before section 5K2.20 became effective. As a general rule, the court must apply the guidelines in effect on the date that a defendant is sentenced and must apply that edition of the manual in its entirety. U.S.S.G. § 1B1.11. An exception to this general rule exists where the use of such guidelines would violate the *ex post facto* clause of the Constitution. The parties have not addressed the issue of whether the exception applies here and the court invites the parties to file supplemental briefs on the issue no later than September 10, 2001.

● Other objections by the defendant

 ██ The defendant "notes" three objections, asserts that the court denied the objection when sentencing Mr. McClatchey's co-defendants and indicates that he will "not reiterate the bases for these objections at this time." The court, in fact, denied the objection to the use of section 2B4.1 and the objection to the calculation of the bribe based on gross rather than net calculation. *Anderson*, 85 F.Supp.2d at 1104–05. The court again denies the objections for the same reasons. After reviewing the record, the court was unable to confirm that it denied a request for departure based on a lack of victims. If it had

been presented such a request, the court would have declined to depart because while the government failed to show that any patients suffered actual or intended harm or loss, *Anderson*, 85 F.Supp.2d at 1091–93, the court is not persuaded that this crime falls outside of the heartland of cases subject to section 2B4.1. "One of the more commonly prosecuted offenses to which [section 2B4.1] applies is offering or accepting a fee in connection with procurement of a loan from a financial institution in violation of 81 U.S.C. § 215." U.S.S.G. § 2B4.1, background. Such cases are analogous to this one in that there are no clearly identifiable victims. The court would deny a request for departure based on the government' failure to identify specific victims.

IT IS THEREFORE ORDERED that the government's and defendant's objections to the offense conduct description are overruled, the government's objection to the use of the November 2000 edition of the Guidelines Manual is overruled, the government's and defendant's objections to the calculation of the bribe are overruled, the government's and defendant's objections to the denial of an adjustment for the defendant's role in the offense are overruled, the government's objection to the fine range is overruled, the government's objection to the victim impact statement and the denial of an enhancement for vulnerable victims are overruled, the defendant's objection to the denial of a downward departure is taken under advisement pending evidence to be presented at the sentencing hearing, and the defendant's objection to the application of section 2B4.1 is overruled.

IT IS SO ORDERED this —— day of August, 2001.