F I L E D
United States Court of Appeals
Tenth Circuit

NOV 4 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN R. DILLON,

Defendant - Appellant.

No. 02-3306

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 01-CR-20080-01-CM)**

---

John Edward Cash (Will Bunch on the briefs), Bunch & Gepford, Kansas City, Missouri, for Defendant - Appellant.

Robert S. Streepy, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Kansas City, Kansas, for Plaintiff - Appellee.

---

Before **SEYMOUR** , Circuit Judge, and **ANDERSON** and **BRORBY** , Senior Circuit Judges.

---

**ANDERSON** , Circuit Judge.

John Dillon pled guilty to a charge of knowingly storing hazardous waste without a permit in violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2 and was sentenced pursuant to the United States Sentencing Commission, Guidelines Manual (Nov. 2001) ("USSG") to sixty months imprisonment followed by three years of supervised release. On appeal, Mr. Dillon challenges the district court's imposition of a nine-level sentencing enhancement under USSG §2Q1.2(b)(2) and a four-level enhancement under USSG §2Q1.2(b)(4). For the reasons set forth below, we affirm.

## BACKGROUND

From 1990 to 1999, Dillon and his partner, Theodore Amberg, owned and operated Environmental Services and Products, Inc. ("ESP"), a Kansas City, Kansas, corporation that engaged in hauling hazardous waste and in cleaning drums of waste generated by other companies. In the course of these activities, the business accumulated drums of liquids, primarily paint-related material as well as oil and fuel. In November 1998, the Environmental Protection Agency ("EPA") conducted an administrative inspection of ESP's business facility. The EPA inspectors found approximately 4000 fifty-five-gallon drums inside the ESP facility. Of those drums, 2300 were empty and had been stacked three high in front of 1700 other drums that the EPA suspected of containing hazardous

material.  The inspectors removed the empty drums and left the others inside.  The inspectors found only two fire extinguishers on the premises.

On December 7, 1998, the Kansas City Fire Marshal issued an order directing that fire companies not enter the ESP facility in the event of fire because the EPA had identified the facility as a hazardous work site.  On January 20, 1999, the EPA issued a unilateral administrative order that the ESP facility be vacated because of the danger it presented to the environment and to human life.

On January 27, 1999, pursuant to a federal search warrant, EPA agents returned to the ESP facility to test the remaining drums for hazardous material.  The agents tested sixty drums for ignitability and found that all sixty contained material with a flashpoint of 60 degrees centigrade (140 degrees Fahrenheit) or less, meeting the definition of "hazardous" under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k.  The RCRA requires a permit for persons operating a facility for the treatment, storage, or disposal of materials defined as hazardous.  42 U.S.C. § 6925.  Dillon had no permit for such activities.

On June 28, 2001, a grand jury indicted Dillon on charges that included knowingly storing hazardous waste without a permit in violation of 42 U.S.C. § 6928(d)(2)(A) of the RCRA.  On February 4, 2002, pursuant to a plea agreement, Dillon entered a plea of guilty to this charge, a class D felony.

-3-

Dillon's presentence investigation report ("PSIR") set Dillon's adjusted offense level at 26, with a criminal history category of II. Pursuant to USSG §2Q1.2(a), which governs sentencing for "mishandling of hazardous or toxic substances or pesticides; recordkeeping, tampering, and falsification; unlawfully transporting hazardous materials in commerce," the base offense level was 8, to which the PSIR recommended several adjustments. One of these adjustments was a nine-level increase for an offense that "resulted in a substantial likelihood of death or serious bodily injury." USSG §2Q1.2(b)(2). The recommendation was based on the PSIR's determination that the "storage of large quantities of ignitable hazardous waste in an urban area . . . may cause a serious explosion and fire." PSIR at 6, ¶ 18, Supp. App. for Appellee, Vol. II at 12. The recommended adjustments also included a four-level increase for an offense involving "storage . . . without a permit." USSG §2Q1.2(b)(4). Because the adjusted offense level would result in a guideline range for imprisonment that exceeded the maximum statutory penalty of five years, the PSIR set the guideline range at the five-year statutory maximum.

Among other objections to the PSIR, Dillon challenged the §2Q1.2(b)(2) and (4) offense level increases. The Probation Office submitted an addendum to the PSIR setting forth these objections and the government's and probation officer's responses, and the parties further addressed these objections in

sentencing memoranda filed with the district court. At the sentencing hearing on July 16, 2002, the United States made a proffer of evidence in support of the facts outlined above. In response, Dillon conceded that these facts were accurate but testified that only the drums tested were in fact ignitable and that those drums were easily identifiable and segregated within the ESP facility. Dillon also testified that, despite the lack of a permit, the ESP facility was equipped with all the necessary safety equipment and warning signs and that the employees were properly trained and outfitted. This testimony was contradicted by the government's proffer of evidence to show that hazardous waste was mislabeled and safety precautions were insufficient.

Considering the PSIR, the government's proffer, and Dillon's testimony, the district court found by a preponderance of the evidence that Dillon had "created a risk of serious injury to others, [including ESP] employees, innocent neighbors, firefighters and other rescue workers" because of the possibility of a fire or explosion, and that "the risk was substantial, not from the way in which the materials were handled, but due simply to the fact that large quantities of ignitable hazardous wastes were sitting on [Dillon]'s properties." Tr. of Sentencing Hr'g at 56, Appellant's App. at 113. The court largely adopted the

sentencing computation set out in the PSIR [1] and incorporated the facts recited in the PSIR as modified by the court's own findings at the sentencing hearing. Accordingly, the court imposed a sixty-month sentence followed by three years supervised release.

## DISCUSSION

On appeal, Dillon renews his objections to the §2Q1.2(b)(2) and (4) sentencing enhancements, contending: (1) that the district court erred by imposing the nine-level increase pursuant to USSG §2Q1.2(b)(2) without considering and making separate findings as to whether there was a substantial likelihood of a fire at the ESP premises or whether Dillon's failure to obtain a permit contributed to the danger; and (2) that the district court erred by imposing the four-level increase for storage without a permit pursuant to USSG §2Q1.2(b)(4) because this increase, on top of the base offense level for a conviction for storage without a permit, constituted impermissible double counting. "We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error." United States v. Cruz-Alcala, 338 F.3d 1194, 1196 (10th Cir. 2003) (further quotation omitted).

_____

[1]The district court modified the PSIR's recommendation by changing Dillon's criminal history category from II to I, but this change had no impact on the length of his sentence.

## USSG §2Q1.2(b)(2)

Subsection (b)(2) of USSG §2Q1.2 provides for a nine-level increase to the base offense level where the district court finds by a preponderance of the evidence that a defendant's offense "resulted in a substantial likelihood of death or serious bodily injury." See United States v. Hishaw, 235 F.3d 565, 573 n.1 (10th Cir. 2000) ("[T]he government's burden of proving a sentencing enhancement is a mere preponderance of the evidence.").

As indicated above, Dillon argues that the district court, in order to apply this guideline correctly, was required to make a separate finding that a fire was substantially likely to occur in the ESP facility. Nothing in the guideline suggests such a requirement. Rather, the guideline requires the district court to make the finding that the offense resulted in a substantial likelihood of death or serious bodily injury, and we review this finding for clear error based on the facts in the record. The risk of fire is necessarily subsumed within this finding.

Dillon also briefly argues that the district court should have specifically considered whether his failure to obtain a permit to store large quantities of ignitable hazardous waste at the ESP facility contributed in any way to the danger posed by the presence of this material. In other words, he asks us to reconsider his claim that the ESP facility was in compliance with all necessary safety precautions despite the absence of a permit. The district court had Dillon's

testimony on this point before it when it made its finding of a substantial likelihood of serious injury. The court's finding suggests that it rejected Dillon's assertion that the ESP facility was safe. Again, we will only disturb this finding if it is clearly erroneous. The case Dillon cites in support of his argument on this point, United States v. Hall, 71 F.3d 569 (6th Cir. 1995), which deals with the distinction between the crime of bank fraud and the act of fleeing the crime, is inapposite.

Having carefully reviewed the record in this case, we conclude that the district court did not clearly err when it found that storing ignitable hazardous waste at the ESP facility created a substantial risk of serious injury. The court thus properly imposed a nine-level increase under §2Q1.2(b)(2). See also United States v. Pearson, 274 F.3d 1225, 1235 (9th Cir. 2001) (affirming the lower court's finding that an employer's improper storage of asbestos created a substantial likelihood of serious injury).

## USSG §2Q1.2(b)(4)

Subsection (b)(4) of USSG §2Q1.2 provides for a four-level increase to the base offense level where a defendant's offense "involved . . . storage . . . without a permit." Dillon argues that because USSG §2Q1.2(a) sets a base offense level for a conviction under 42 U.S.C. § 6928(d)(2)(A) for storing hazardous waste without a permit, the district court's application of the USSG §2Q1.2(b)(4)

enhancement for storing without a permit constitutes impermissible double counting.

We disagree. We have previously rejected a claim of impermissible double counting where a guideline's base offense level covers a broader category of offenses than that covered by an enhancement under the same guideline. United States v. Duran, 127 F.3d 911, 918 (10th Cir. 1997). We reasoned that "'[i]f . . . it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior.'" Id. at 917 (quoting United States v. Reese, 2 F.3d 870, 895 (9th Cir. 1993)); see also United States v. Schaal, 340 F.3d 196, 198-99 (4th Cir. 2003); United States v. Ellen, 961 F.2d 462, 468 (4th Cir. 1992).

Here, USSG §2Q1.2 "governs sentencing for a wide range of environmental crimes involving hazardous or toxic substances or pesticides. Section 2Q1.2(a) provides for a Base Offense Level for all of these offenses. Section 2Q1.2(b) provides for adjustments upwards or downwards depending on the specific offense characteristics." United States v. Kelley Technical Coatings, Inc., 157 F.3d 432, 443 (6th Cir. 1998). Thus, it is possible to be sentenced under §2Q1.2(a) without having committed the offense of storing environmental waste

without a permit. A conviction for this offense requires that the §2Q1.2(b)(4) enhancement for storing without a permit be applied in order to capture the full extent of the offense's wrongfulness. We conclude that the district court did not engage in impermissible double counting when applying the upward adjustment pursuant to USSG §2Q1.2(b)(4) in this case.

## CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is AFFIRMED.