**UNITED STATES of America,**
**Plaintiff,**

v.

**John R. DILLON, Defendant.**

**No. CIV.A.01–20080–CM.**

United States District Court,
D. Kansas.

Sept. 28, 2004.

Donald L. Zemites, Kansas City, KS, Gerald M. Handley, Kansas City, MO, for Defendants.

R. Shawn Streepy, Kansas City, KS, for Plaintiff.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter comes before the court on defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 92); Supplemental Motion for Relief Pursuant to 28 U.S.C. § 2255 (Docs. 95 & 96);[1] and Motion to Appoint Counsel (Doc. 104).

### I. Procedural History

The defendant was charged in three counts of a four count Indictment on June 28, 2001. Count 1 of the Indictment charged the defendant and the co-defendant, Theodore Amberg III, with knowingly storing hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A); Count 2 charged the defendant and co-defendant with knowingly storing hazardous waste and thereby placing another person in imminent danger of death or serious bodily injury, in violation of 42 U.S.C. § 6928(e); Count 3 charged co-defendant Amberg individually and Count 4 charged defendant individually with making a materially false statement within the jurisdiction of the

Environmental Protection Agency (EPA), an agency of the United States, in violation of 18 U.S.C. § 1001.

The defendant appeared in this court on February 4, 2002, and entered his guilty plea to Count 1 of the Indictment, which charged defendant with knowingly storing hazardous waste. The government agreed to dismiss Counts 2 and 4 in exchange for defendant's plea. During the plea hearing, defendant acknowledged, both orally and in the written plea agreement which he signed during the hearing, that he was aware that the maximum term of imprisonment which could be imposed as a result of his guilty plea to Count 1 of the Indictment was five years.

The district court requested the attorney for the government to recite what the government's evidence would have been had this case gone to trial. The attorney for the government stated that the defendant was one of the operators of Environmental Services and Products (ESP), a facility located in Kansas City, Kansas, where he illegally stored hazardous waste without either a permit or interim status. According to the oral proffer of the government's evidence, the waste that defendant stored at the ESP facility met the definition of solid waste which was ignitable, that is, it had a flash point of sixty degrees centigrade or less. The defendant acknowledged that the government could present this evidence. The court accepted defendant's plea of guilty to Count 1 of the Indictment, found defendant guilty, and scheduled sentencing for April 29, 2002.

Prior to the scheduled sentencing hearing, the Probation Office prepared a Pre-Sentence Investigation Report (PSIR) recommending that the sentencing calculations include a nine-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(2) based

1. It appears to the court that Docs. 95 and 96 are identical in substance.

upon the determination that "the offense resulted in a substantial likelihood of death or serious bodily injury," as well as a four-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(4) based upon the finding that the defendant stored hazardous waste without a permit.

At the commencement of the sentencing hearing on July 16, 2002, this court first addressed whether the total offense level should include a nine-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(2). The court requested that the government present its evidence on this issue by proffer. The government proffered the following evidence: David Clark, an EPA Criminal Investigation Division Special Agent, was available to testify that Richard Tabor, defendant's employee, had told him that he was hired by defendant in 1995 when he was sixteen to work at ESP, where he worked until 1999. Clark would testify that Tabor told him that he had passed out from the fumes caused by opening 55 gallon drums of hazardous waste. Tabor also told Clark that he had found another employee, Harold Lawrence, passed out at ESP. Additionally, Tabor told Clark that he expressed to defendant his concerns about his safety and that defendant gave his employees a total of two charcoal masks for protection from the fumes and odors of the wastes stored at ESP. Tabor further stated that there was a problem with small fires at the ESP facility and that defendant's response was to give the employees some fire suppressant. The government also proffered in support of the recommended enhancement a video-tape of an EPA inspection at the ESP facility, which was recorded in November of 1998. This videotape showed drums (fifty-five gallon barrels) stacked three high, and not on pallets; the inspectors determined that these stacked drums were empty and placed in front of other drums which contained hazardous waste. Em-ployees of ESP told Clark that they were instructed by defendant to stack the empty drums in front of the drums containing waste. As a result of the November 1998 inspection, EPA issued a unilateral administrative order, directing that the premises be immediately vacated as it presented a serious harm to the environment and to human life.

After EPA issued the unilateral administrative order, Clark obtained a federal search warrant in January 1999 to obtain samples from some of the drums to determine whether the contents were hazardous waste. The government proffered evidence that approximately 4,000 drums had been removed from the ESP facility by the EPA during its clean-up operation: 2,300 of which were empty and 1,700 of which contained liquid material; these drums were "haz-catted" or field-tested by the EPA inspectors, who determined that the drums contained hazardous substances. Pursuant to the search warrant, Clark then took samples from 95 of these drums, 60 of which were tested for the hazardous characteristic of ignitability and tested positive (the other 35 were tested for other characteristics). "Ignitability" is defined as being a liquid which has a flash point of 140 degrees Fahrenheit (or sixty degrees centigrade) or less pursuant to 40 CFR § 261.21(a)(1). The defendant acknowledged during the sentencing hearing that theses drums were "obviously ignitable." Finally, the government proffered evidence that the Fire Marshal of Kansas City, Kansas, had issued an order on December 7, 1998, directing that fire companies should treat the ESP facility as dangerous and not enter the facility during any fire suppression activity.

At the conclusion of the government's proffer, the defendant presented his evidence regarding the enhancement by both proffer and the testimony of defendant

himself. The defendant admitted that there were only two fire extinguishers at the facility. At the conclusion of cross-examination, the defendant acknowledged that he had a lengthy background in environmental compliance. The court concluded that the application of the nine-point enhancement was appropriate, concluding from the evidence that "the defendant created a risk of serious injury to others ... due simply to the fact that large quantities of ignitable hazardous wastes were sitting on the defendant's properties." The court rejected the defendant's argument that there must be a showing that the ignitable wastes were handled in such a way that fire was likely.

The other disputed enhancement at sentencing involved a four-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(4) for storage of hazardous waste without a permit. The defendant objected to this recommendation, claiming that it constituted "double counting," as he had been convicted of storing hazardous waste without a permit.

The court disagreed with the defendant's position and applied the enhancement. Noting that the law in the Tenth Circuit is that the application of two enhancements are considered double counting only when the two sentence enhancements overlap in every conceivable instance, not that they overlap often, the court determined that the enhancement did not overlap with the base offense level. In so doing, the court relied on *United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432 (6th Cir.1998), and the fact that the increase in the defendant's sentence for failing to obtain a permit was based upon a different aspect of the defendant's conduct than the offense of conviction.

Consequently, at the conclusion of the sentencing hearing, the court sentenced the defendant to a sixty month term of imprisonment. The court found that defendant's actions of storing hazardous waste without a permit (U.S.S.G. § 2Q1.2(a) base level of 8 for mishandling toxic waste, plus a four-level enhancement under U.S.S.G. § 2Q1.2(b)(4) for doing so without a permit) "resulted in a substantial likelihood of death or serious bodily injury" (nine-level enhancement under U.S.S.G. § 2Q1.2(b)(2)), that his actions resulted in a "cleanup which required a substantial expenditure" (four-level enhancement under U.S.S.G. § 2Q1.2(b)(3)), and that the defendant was the leader of a criminal activity involving five or more individuals (four-level enhancement under U.S.S.G. § 3B1.1(a)). This resulted in a total offense level of 29, minus 3 for acceptance of responsibility, resulting in a level 26, which translated to 63 to 70 months imprisonment.

As the statutory maximum for this violation was 60 months, the court sentenced defendant to 60 months imprisonment. The defendant then filed his "Notice of Appeal," addressing only the two enhancements under U.S.S.G. § 2Q1.2(b)(2) and U.S.S.G. § 2Q1.2(b)(4). After an exchange of appellate briefs and hearing oral argument from the parties, the United States Court of Appeals for the Tenth Circuit affirmed this court's ruling. *See United States v. Dillon*, 351 F.3d 1315 (10th Cir. 2003).

On May 7, 2004, the defendant filed a pro se petition under 28 U.S.C. § 2255 alleging ineffective assistance of counsel, and on July 2, 2004, the defendant's current legal counsel filed a supplemental motion to vacate. In essence, defendant argues that 1) the court's finding of facts, which enhanced the defendant's sentence to the maximum statutory level, violated his Sixth Amendment right to a jury trial as set forth in *Blakely v. Washington*, ——

U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); 2) he is actually innocent of the charge to which he plead guilty and for which he was sentenced; and 3) his counsel was ineffective in providing assistance in both the guilty plea phase and the sentencing phase of this matter.

On August 23, 2004, the court held a hearing on defendant's motion to vacate. At the hearing, the court asked questions of counsel and allowed counsel to present oral argument; the court did not receive evidence at that time. On August 25, 2004, the court granted defendant's request to submit a supplemental brief on the issue of the applicability of *Blakely*.

## II. Discussion

### A. Motion to Appoint Counsel

On Sunday August 22, 2004, the day prior to the scheduled oral arguments in this matter, defendant filed a Motion to Appoint Counsel seeking to have defendant's current counsel appointed retroactively to their first contact with defendant and defendant's representatives (presumably his parents) in this matter. In support of this request, defendant claims that the legal and factual claims in this matter are complex, and that he is indigent and does not wish to impose any additional financial burden on his parents.

■ The Sixth Amendment right to counsel does not apply to collateral attacks on a conviction such as a § 2255 motion. *Penn. v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no right to appointed counsel to pursue collateral attack on conviction). The district court has discretion, however, to appoint counsel in a habeas case when "the interests of justice so require." 18 U.S.C. § 3006A(2)(B).

■ In this case, the court does not consider defendant's claims particularly complex, either legally or factually. More-

over, upon review of defendant's initial brief, which was filed pro se, the court finds that defendant was adequately able to articulate his claims. As such, defendant's motion to retroactively appoint his current counsel is denied.

### B. Applicability of *Blakely v. Washington*

Defendant's current motion pursuant to 28 U.S.C. § 2255 is the first filed by defendant requesting such relief. Thus, the court considers this neither a second nor successive motion filed under § 2255.

Defendant argues that his sentence was illegal because it was based on facts not found by a jury beyond a reasonable doubt. In so arguing, defendant relies on *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), wherein the Supreme Court ruled that the Washington state courts could not constitutionally rely on judicial findings to impose a sentence above the standard range set forth in the statute. Subsequently, the Seventh Circuit held that the ruling in *Blakely* rendered the federal sentencing guidelines unconstitutional. *United States v. Booker,* 375 F.3d 508 (7th Cir.2004). The Supreme Court has agreed to hear in October the government's appeal from the *Booker* decision.

■ The Supreme Court has not expressly held that the rule announced in *Blakely* is applicable to the Federal Sentencing Guidelines, nor has it held that the rule is retroactive to cases on collateral review. "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain,* 533 U.S. 656, 663, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). As such, this court concludes that, if *Blakely* does apply to the federal sentencing guidelines, it applies only to cases

pending on direct appeal. In the event the Supreme Court were to hold that *Blakely* has retroactive application, defendant could renew his claim. At the present time, however, defendant's claim is premature.

## C. Claim of Ineffective Assistance of Counsel at Guilty Plea Phase

Defendant argues that his attorney failed to provide effective assistance prior to and during his plea of guilty. Where a defendant enters a guilty plea upon the advice of counsel, a challenge to the validity of the plea based upon ineffective assistance of counsel is governed by the *Strickland v. Washington* two-part test. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A defendant first must show that counsel's representation fell below an objective standard of reasonableness, as determined by the range of competence required in criminal cases. *Id.* at 56, 106 S.Ct. 366. Second, a defendant, satisfying the prejudice requirement, "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366.

■ Specifically, defendant claims that trial counsel was ineffective for failing to adequately advise him of the "generator" defense. Where a defendant claims that counsel failed to advise him of available defenses, the prejudice inquiry must address objectively whether the defense likely would be successful at trial.

■ Defendant points out that both the Kansas Environmental Regulations and the Code of Federal Regulations, K.A.R. 28–31–2 and 40 C.F.R. Parts 260–270, permit "generators" of hazardous waste to accumulate such waste on-site for a period of 90 days without the need to obtain a permit. Defendant contends that he did not engage in the "storage" of hazardous waste but was, rather, a generator. The record belies this contention.

First, it is clear from the record that trial counsel adequately advised defendant of the charge to which he pled guilty. At his change of plea hearing, defendant confirmed under oath that he and his attorney had discussed the charge contained in the Indictment and that his attorney explained the nature of the charge and the consequences of pleading guilty to that charge. Defendant further confirmed that he had discussed with his attorney both the plea agreement and the petition to plead guilty and that he was satisfied with the overall representation by his attorney, including his advice regarding the plea.

More importantly, defendant clearly admitted, on more than one occasion, that he in fact engaged in the conduct as charged in the Indictment. Prior to entering his plea of guilty, defendant signed the Plea Agreement, which is part of the record. Paragraph 3 of the Plea Agreement stated:

> The defendant, John R. Dillon, understands and acknowledges that the Court will not permit anyone to enter a plea of guilty who maintains a belief that he is innocent. Accordingly, the defendant, John R. Dillon, will admit under oath during the Rule 11 proceeding for entry of a guilty plea that had this matter proceeded to trial the government would be able to present evidence that on or about January 20, 1999, he illegally stored, without either obtaining a permit or interim status, hazardous waste at the Environmental Services and Products, Inc. facility located at 100 South First Street in Kansas City in the District of Kansas. This waste was hazardous under the Resource Conservation and Recovery Act, Title 42, United States Code, Section 6901 et seq., and

the regulations promulgated thereto, for the reason that is was a solid waste which had a flash point at 60 degrees centigrade or less. The United States would also be able to present evidence that during the month of January 1996, and at subsequent times, the defendant John R. Dillon caused such hazardous waste to be transported to the facility located at 100 South First Street, Kansas City, Kansas, a location which he knew was not permitted to receive such waste, and that on or about January 27, 1999, he knew that the waste remained illegally stored without a permit at the facility.

Then, during his plea of guilty before this court, defendant stated under oath that, during the time period set forth in the Indictment, he stored hazardous waste at his facility and that he had not obtained a permit that would allow him to legally store the waste. The defendant also stated under oath that, while the hazardous waste was stored at the facility, he realized that what he was doing was in violation of the law. The court assumes that the defendant was telling the truth when he testified and when he signed the Plea Agreement, both under oath, and there is no evidence that his signing the Plea Agreement or making these statements under oath were anything other than truthful and voluntary.

The court turns to whether defendant was in fact entitled to generator status, thereby allowing him to store hazardous waste generated on-site for up to 90 days without a permit. Defendant does not claim that it would have been legal for him to store hazardous waste at his facility which was not generated there. Yet, the government contends that it provided to defendant, prior to the entry of his guilty plea, extensive evidence, in the form of both witness statements and sampling in-formation, adequately demonstrating that at least part of the hazardous waste stored at defendant's facility on January 27, 1999, was not generated on-site, but came in from the outside.

Moreover, in Paragraph 3 of the Plea Agreement, as set forth above, the defendant acknowledged bringing hazardous waste into the facility from offsite and knowingly storing it for more than 90 days. During his sentencing hearing, when he was shown photographs of hazardous waste taken at his facility, defendant acknowledged that such hazardous waste was not generated at his facility. Defendant also stated during the sentencing hearing that hazardous waste had been brought into and stored at the facility which had not been generated there. Accordingly, these wastes were not exempt under the 90–day storage provisions.

Furthermore, the regulations allow such storage as a generator only if "[t]he date upon which each period of accumulation begins is clearly marked and visible for inspection on each container," and "[w]hile being accumulated on-site, each container and tank is labeled with the words 'Hazardous Waste.'" 40 C.F.R. § 262.34(a)(2) and (3). The defendant has not alleged, much less demonstrated, that he met either of these requirements for storage of hazardous waste generated at a facility. In fact, photographs and sample logs of hazardous waste containers produced by the government show that neither of these two requirements was met.

■ Based upon the foregoing, the court concludes that both defendant's statements under oath and the government's evidence establish that defendant knowingly stored hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A) and that a sufficient factual basis existed for this court to accept defendant's guilty plea. The court points out that trial counsel's

competence is presumed, and defendant must rebut this presumption by proving that his counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *See Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Defendant has failed to establish that his counsel's advice to plead guilty to Count I fell below an objective standard of reasonableness. The court also is mindful that defense counsel's tactical choice enabled defendant to plead guilty to one charge-for which there was an ample factual basis-and to have dismissed two other counts against him.

Even if the court assumed that defendant's attorney's failure to inform him of the regulations excepting hazardous waste generators [2] was unreasonable, defendant suffered no prejudice as a result. The government's evidence demonstrated that such a defense was never available to defendant and would not have succeeded had it been raised in a trial. Defendant's claim that his trial counsel provided ineffective assistance during the guilt phase is denied.

### D. Claim of Ineffective Assistance of Counsel at the Sentencing Hearing

■ Defendant first contends that his counsel failed to argue at sentencing that the proposed enhancements required a factual finding by a jury beyond a reasonable doubt. However, the Supreme Court had not at the time, and has not yet, held that the rule announced in *Blakely* is applicable to the Federal Sentencing Guidelines. Accordingly, the court finds no merit in defendant's ineffective assistance claim on this basis.

■ The defendant next claims that his counsel failed to subpoena any of defendant's employees who could have provided evidence on his behalf at sentencing. However, defendant's brief did not set forth, nor did counsel articulate when asked by the court at the hearing, what evidence defendant would have provided and how such evidence would have affected the outcome of the sentencing. Defendant also contends that his counsel did not challenge the statements of defendant's former partner, and statements of other witnesses present at the sentencing hearing, whose testimony was proffered. Again, defendant fails to state which witnesses's statements were not, but should have been, challenged and why his counsel's failure to challenge those statements would have affected the outcome of the sentencing.

Moreover, defendant fails to set forth which enhancement(s) the above-mentioned deficiencies impacted. For example, with respect to the enhancement pursuant to U.S.S.G. § 2Q1.2, which provides for a nine-level increase where the defendant's offense resulted in a substantial likelihood of death or serious bodily injury, the court did not rely on the testimony of other witnesses proffered by the government. Rather, the court found that the storage of ignitable hazardous waste, in and of itself, created a substantial risk of serious injury. This finding was affirmed by the Tenth Circuit. *Dillon,* 351 F.3d at 1318–19. Significantly, defendant himself admitted to such storage during his testimony at the sentencing hearing, and those admissions themselves support application of the enhancement. As such, the court is not convinced that, but for trial counsel's failure to call other witnesses or challenge

---

**2.** The court did not hold an evidentiary hearing in this matter. As such, for purposes of this opinion, the court will presume that de-

fendant's attorney did not discuss with defendant the generator regulations.

proffered statements, the result of the proceeding would have been different.

■ The defendant also alleges that his counsel did not introduce evidence that the Kansas City Fire Department had inspected his property several times without noting violations of fire codes. At the hearing on this matter, defendant's counsel proffered that defendant passed Fire Department inspections in 1997 and 1998. Foremost, the court does not believe such inspections are relevant to defendant's sentencing. In any event, those inspections occurred prior to the December 7, 1998 letter from the Fire Department, which stated that defendant's work site had been identified by the EPA as hazardous. As a result, because the inspections to which defendant point reflect conditions that no longer existed at the time of the December 7, 1998 letter, the court concludes that their introduction would not have impacted defendant's sentence.

Defendant next asserts that his trial counsel was ineffective because counsel neither obtained nor presented to the court "the" Environmental Impact Statement which, defendant argues, would have shown that defendant's property was contaminated before he purchased it. Defendant contends that such evidence might have demonstrated that the four-level enhancement under U.S.S.G. § 2Q1.2(b)(3) for an offense that resulted in a cleanup which requires a "substantial expenditure" was improper. Yet, when asked by the court at the hearing on this matter, defendant's counsel stated that he did not have such an Environmental Impact Statement. In any event, virtually all of the money which the EPA and private contractors expended at the site was used to dispose of the drums, which were not on-site before the defendant purchased the building.

■ Along those same lines, defendant's counsel argued at the hearing that the Itemized Cost Summary was inaccurate, in that the costs set forth therein included disposal of drums that contained hazardous material, but may not have contained hazardous waste. However, both the direct and indirect costs associated with the clean up of the hazardous waste *site*, not just the hazardous waste itself, is properly included for purposes of U.S.S.G. § 2Q1.2(b)(3). Defendant's request for relief on this basis is denied.

■ Defendant next claims that, after the court informed the parties of a "social relationship" with Fire Marshal Rocha, trial counsel did not consult with him before declaring that such a relationship was not a problem. The court stated for the record that this relationship would have no effect or interfere with the decisions or ruling made in the case. When questioned by the court at the hearing on this matter, defense counsel advised the court that defendant was not actually arguing that the social relationship impacted any of the court's ruling. As such, defendant's claim on this basis fails to meet the test as set forth in *Strickland*.

Finally, defendant claims ineffective assistance because his trial counsel was not present during meetings with the probation officer who prepared the PSIR. However, "the presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment." *United States v. Gordon*, 4 F.3d 1567 (10th Cir.1993). As such, the absence of defendant's counsel from these meetings does not result in a "serious error" as defined in *Strickland*.

In conclusion, defendant has failed to demonstrate either that the ruling in *Blakely* applies to his sentence or that his attorney failed to provide effective assistance of counsel. Accordingly, the defendant's motion to set aside, vacate, or cor-

rect his sentence pursuant to 28 U.S.C. § 2255 is without merit and is therefore denied.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 92); Supplemental Motion for Relief Pursuant to 28 U.S.C. § 2255 (Docs. 95 & 96); and Motion to Appoint Counsel (Doc. 104) are denied.