**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARTIN GARCIA,

Defendant-Appellant.

No. 04-8012

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 03-CR-189-D)**

George W. Aristotelidis, San Antonio, Texas, for Defendant-Appellant.

James C. Anderson, Assistant United States Attorney, (Matthew H. Mead, United States Attorney, District of Wyoming, with him on the brief) Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **O'BRIEN** , **ANDERSON** , and **McCONNELL** , Circuit Judges.

**McCONNELL** , Circuit Judge.

Martin Garcia pleaded guilty to charges of interstate transportation of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). Pursuant to

the then-mandatory Federal Sentencing Guidelines, the district court applied the cross-reference found at U.S.S.G. § 2G2.2(c)(1) and, after applying two sentence enhancements and one sentence reduction, determined that Mr. Garcia's final base offense level was 30. The district court sentenced Mr. Garcia to 97 months' imprisonment, the low end of the applicable range. Mr. Garcia raises three arguments on appeal: (1) the district court erred in applying the cross-reference; (2) the district court erred in refusing to grant a downward departure in sentencing for government misconduct; and (3) his sentence is unconstitutional in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

## I. Factual and Procedural Background

On July 17, 2003, Special Agent Robert Leazenby of the Wyoming Division of Criminal Investigation ("DCI") entered an internet chat room entitled "PRETEEN POSTINGS & TRADING." Agent Leazenby engaged in internet chat via Yahoo Instant Messenger, using the undercover identity of "ibalissasmom." Mr. Garcia, located in Texas, sent an instant message to "ibalissasmom," initiating a private conversation. Agent Leazenby portrayed "ibalissasmom" as a 35 year-old mother with two daughters. When Mr. Garcia learned that the daughters' ages were 7 and 12, he replied "mmmmmmmmmm perfect ages." Aplt. Br. Appx., at 8. During the course of the conversation, Mr. Garcia expressed interest in becoming sexually active with minor girls, and stated a

2

particular preference for girls ages 11-15. Mr. Garcia also stated that he wished he "could meet someone who was willing to share." *Id*., at 9. From the context of their conversation, it is evident that Mr. Garcia meant that he was seeking to sexually abuse minor children with the consent of the parent.

The next day, Mr. Garcia again initiated an internet chat with "ibalissasmom." Mr. Garcia asked "ibalissasmom" to send him pictures of herself and her girls. When asked what kind of pictures he wanted, Mr. Garcia replied "nasty would be great but id settle for sexy or whatever you want to send." *Id*., at 12. "Ibalissasmom" claimed not to have digital pictures that could be sent via the internet. "Ibalissasmom" also stated that she did not "have the nasty ones, [but] would need to photo them." *Id*. Mr. Garcia then made the following offer: "ill send u [polaroid film] if u will take some nasty [pictures] for me." *Id*. at 13. Mr. Garcia then described explicit sexual acts that he wanted the mother and both daughters to perform for the camera. Agent Leazenby gave Mr. Garcia the address of a post office box in Cheyenne, Wyoming, to which he should send the film. Unbeknownst to Mr. Garcia, the post office box belonged to DCI. Mr. Garcia sent Polaroid film that day and it arrived in the DCI post office box on July 23, 2003.

On July 25, 2003, "ibalissasmom" sent an e-mail to Mr. Garcia asking him again to describe what he wanted in the pictures. Mr. Garcia replied via e-mail

3

and suggested specific sexual acts involving the mother and both daughters. On August 3, 2003, Agent Leazenby initiated an internet chat with Mr. Garcia for purposes of obtaining a photograph of him in order to confirm his identity before arresting him. Agent Leazenby, still undercover, asked "do you have a pic for me?" Aplt. Br. Appx., at 22. Mr. Garcia said, "sure what u wanna see?" *Id.* Agent Leazenby replied, "I meant of you, but what do you suggest?" *Id.* Mr. Garcia then suggested that he send photos depicting minors engaged in sexual conduct with adults, and he sent two photos. *Id.* One of the pictures depicted an adult male ejaculating on the face of an adolescent female. With respect to this picture, Mr. Garcia said, "heres one that I imagine is me with ur oldest." Aplt. Br. Appx., at 22.

Based on the foregoing, Mr. Garcia was charged with interstate distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). Mr. Garcia pleaded guilty and in the plea agreement acknowledged that he had been advised of U.S.S.G. § 1B1.3 regarding the use of relevant conduct in establishing his sentence. For the crime to which Mr. Garcia pleaded guilty, the base offense level for purposes of sentencing is normally 17, as provided in U.S.S.G. § 2G2.2 (2003). However, the district court determined that the cross-reference at § 2G2.2(c)(1) should apply. This cross-reference states that "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or

advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1." U.S.S.G. 2G2.2(c)(1).

Applying this cross-reference, Mr. Garcia's original base offense level was 27. The district court then applied a four-level enhancement pursuant to § 2G2.1(b)(1) because the offense involved a victim who had not attained the age of twelve, a two-level enhancement pursuant to § 2G2.1(b)(3) because the crime involved the use of a computer, and a three-level reduction pursuant to § 3E1.1(a) and (b) for acceptance of responsibility. Mr. Garcia's final base offense level was therefore 30 and, coupled with a Criminal History Category "I", his sentencing range was 97-121 months. The district court sentenced him to 97 months.

## II. Application of the Cross-Reference

Mr. Garcia argues that the district court erred when it applied the cross-reference. "[T]his Court continues to have the same jurisdiction to review Guidelines sentences as it had before the Supreme Court's decision in *Booker*." *United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2005). In considering the application of the sentencing guidelines, we review the district court's factual findings for clear error, and its legal determinations de novo. *United States v. Dillon*, 351 F.3d 1315, 1318 (10th Cir. 2003). We will "give due deference to the district court's application of the guidelines to the facts." *United*

*States v. Norris*, 319 F.3d 1278, 1284 (10th Cir. 2003).

### A. Relevant Conduct

Mr. Garcia first argues that the offense with which he was charged did not "involve" the behavior listed in the cross-reference. According to Mr. Garcia, his decision to send two pornographic images of children to "ibalissasmom" on August 3rd was in no way related or relevant to his quest to obtain pornographic pictures of the two minor daughters of "ibalissasmom."

The term "offense," as used in the cross-reference, includes both charged and uncharged relevant conduct. *United States v. Tagore*, 158 F.3d 1124, 1128 (10th Cir. 1998); *United States v. Miller*, 166 F.3d 1153, 1155 (11th Cir. 1999); U.S.S.G. § 1B1.1 n.1(H). Relevant uncharged conduct must be proven by a preponderance of the evidence. *United States v. Magallanez*, – F.3d – WL 1155913 at *8 (10th Cir. 2005). This court has broadly construed the meaning of relevant conduct. *United States v. Asch*, 207 F.3d 1238, 1243 (10th Cir. 2000). Relevant conduct consists of "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The commentary to § 1B1.3 explains what constitutes a "common scheme" or "the same course of conduct":

> Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi . . . .

6

> Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses . . . .

U.S.S.G. 1B1.3, n.9 (A) and (B).

Mr. Garcia does not dispute that he attempted to persuade "ibalissasmom" to engage in sexual activity with her two daughters and to photograph the event. Rather, he argues that this conduct was not related to his decision to send the child pornography on August 3rd. Specifically, he points to the temporal relationship between the two events, noting that "the images were sent well after, and without any connection to the first set of conversations involving the mailing of the film . . . ." Aplt. Br. at 27.

Mr. Garcia's argument is not persuasive, for several reasons. The internet chat room in which Mr. Garcia made the acquaintance of "ibalissasmom" was entitled "PRETEEN POSTINGS AND TRADING." "Trading" is defined by Webster's Dictionary as "to make an exchange of one thing for another . . . to pass back and forth." Webster's II New Riverside University Dictionary 1223 (1984). "Trading" in this context refers to the exchanging of "preteen" pornographic material. Mr. Garcia repeatedly offered to make exchanges. He offered to send beauty products to "ibalissasmom" in exchange for her "daughters." He offered to send Polaroid film if she would use it to photograph

7

herself and her daughters.  When viewed in this "barter" context, Mr. Garcia's decision to send child pornography *to* "ibalissasmom" is relevant to his quest to obtain child pornography *from* "ibalissasmom."

The fact that Mr. Garcia did not send the two images until a few days after requesting the Polaroid images does little to bolster his argument.  This Court has held that conduct stretching out over a five-year period was not too remote to be considered relevant conduct if those acts were part of the same course of conduct. *United States v. Neighbors*, 23 F.3d 306, 310-11 (10th Cir. 1994).  Here, a mere eight days had passed from the time that Mr. Garcia requested specific sexual conduct to be photographed and when he sent child pornography to "ibalissasmom."

On August 3rd, Mr. Garcia continued to await the arrival of the pictures he had "ordered."  During the same conversation in which he sent the two child pornography images to "ibalissasmom," he also stated, "can't wait to see ur pics." Mr. Garcia was anxious not only to receive the pictures but to meet in person with "ibalissasmom" and her daughters.  He stated, as he sent one of the two pornographic pictures, "heres one that I imagine is me with ur oldest [daughter]." Mr. Garcia's decision to send the digital pornography and his requests for sexual images of "ibalissasmom" and her daughters were united by the same purpose - the eventual sexual abuse of two minor children.  This predatory scheme was

8

common throughout the conversations between Mr. Garcia and "ibalissasmom."

In every chat between the two, Mr. Garcia expressed an interest in both daughters.

His purpose in conversing with "ibalissasmom" is best explained in his own

words: "would u really consider sharing urself and your girls with me? . . .

Really? Then I feel privilged . . . [I] want to visit u and the girls every chance I

got." Aplt. Br. Appx., at 12.

Mr. Garcia's quest to obtain sexually explicit images of the daughters of

"ibalissasmom" was part of a common scheme and common course of conduct

that were relevant to his charged conduct. Therefore, the district court judge did

not commit error when he considered this relevant conduct in sentencing Mr.

Garcia.

### B. Production

Mr. Garcia relies on two cases, *United States v. Wilkinson*, 169 F.3d 1236

(10th Cir. 1999) and *United States v. Tagore*, 158 F.3d 1124 (10th Cir. 1998), for

the proposition that because he did not produce the two photographs that he sent

to "ibalissasmom" on August 3rd the cross-reference does not apply. In

*Wilkinson*, the district court applied an identical cross-reference for the crime of

possession of child pornography when it found that the defendant "produced the

videos and photographs" in his possession. *Wilkinson*, 169 F.3d at 1237. In

*Tagore*, the district court applied the cross-reference for the crime of sending and

9

receiving child pornography when it found that although the defendant had not "produced" child pornography in the sense of taking pictures, he belonged to a sophisticated internet group that sought to facilitate the production and distribution of child pornography. *Tagore*, 158 F.3d at 1126-27. Mr. Garcia argues that because he did not personally produce the two images that he sent on August 3, 2003, and because he was not involved in a sophisticated internet group dedicated to the production of child pornography, the cross-reference does not apply.

Mr. Garcia's reliance on *Wilkinson* and *Tagore* is misplaced and he improperly characterizes the reason the district court applied the cross-reference. The district court applied the cross-reference not because Mr. Garcia produced the two images sent on August 3rd, but because he sought to have "ibalissasmom" engage in sexual activity with her two minor daughters and to photograph this activity. Even if we were to construe Mr. Garcia's argument as contesting the finding that he sought to "produce" these latter images, his argument would find no support in law or fact.

Mr. Garcia urges us to adopt a narrow and hyper-technical interpretation of the cross-reference. According to Mr. Garcia, if one is not physically standing behind the camera or involved in a multi-person conspiracy to distribute child pornography, then one is not "producing" child pornography, and thus the cross-

10

reference does not apply.  Such an interpretation is contradicted by a plain reading of the cross-reference, the commentary following the guideline, and case law.

The conduct the guideline seeks to punish is not only the actual production of child pornography, but the active solicitation for the production of such images.  Where, as here, the images are not actually produced, the cross-reference may still apply so long as the defendant "offer[ed] or [sought] by notice or advertisement, a minor to engage in sexually explicit conduct . . . ." U.S.S.G. 2G2.2(c)(1).  There is no doubt that Mr. Garcia sought to have minors engage in sexually explicit conduct.  Mr. Garcia asked for "nasty" pictures of "ibalissasmom" and her two daughters.  Mr. Garcia offered to send Polaroid film to "ibalissasmom" if she would take "nasty" pictures for him.  Mr. Garcia asked for pictures of "ibalissasmom" and her daughters "nude doing things to each other" and described on at least two occasions specific sexual acts of which he wanted close-up photographs.

The commentary following the guideline states that the cross-reference "*is to be construed broadly* to include all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of

11

such conduct." U.S.S.G. 2G2.2 n.3 (emphasis added). Neither the guideline nor the commentary states that in cases where actual images are produced, the defendant must be the one who is behind the camera. A defendant's conduct may be one step removed from the actual production and still fall within the ambit of the cross-reference. *United States v. Whitesell*, 314 F.3d 1251, 1255 (11th Cir. 2002) (rejecting the defendant's argument that he did not "cause" the production of images when he asked a fifteen year old girl to take pictures of herself and send them to him); *United States v. Anderton*, 136 F.3d 747, 750 n.2; U.S.S.G. 2G2.2 n.1. It is clear, based on his explicit statements to "ibalissasmom," that Mr. Garcia was *offering or seeking by notice or advertisement*, a minor to engage in sexual activity.

### C. Purpose

Mr. Garcia's final argument with respect to the application of the cross-reference is that if the purpose for which a defendant sought to have minors engage in sexual activity is something other than producing a visual depiction of the activity, then the cross-reference may not apply. To support this proposition, he relies on *United States v. Crandon*, 173 F.3d 122 (3rd Cir. 1999). In *Crandon*, the court held that a district court must consider the defendant's "state of mind to ensure that the defendant acted for purposes of producing a visual depiction of [sexually explicit] conduct" when determining whether to apply the cross-

12

reference.  *Crandon*, 173 F.3d at 130.  The *Crandon* court posited that "it is conceivable that [the defendant] did have alternative . . . purposes in taking the photographs."  *Id*.

Mr. Garcia's argument suffers from the same flaw as his previous argument, namely, that he misconstrues the reason the district court applied the cross-reference.  The cross-reference was not, as he alleges, applied for his conduct involving the two photographs he sent on August 3, 2003.  Rather, it was applied for his entire course of conduct involving "ibalissasmom" and her two daughters.  When the issue is properly re-framed as, "for what purpose did Mr. Garcia seek to have the daughters of "ibalissasmom" engage in sexual activity," then *Crandon* is of no help to Mr. Garcia.  The district judge who sentenced Mr. Garcia stated that he would be "engage[d] in flights of fantasy and fiction" if he were to believe that Mr. Garcia's purpose in seeking to have these two girls engage in sexual activity was for anything other than producing visual depictions to satisfy his perverse sexual desires.  R. Vol. 4, at 89.  Mr. Garcia's conversations with "ibalissasmom" reveal that his purpose in asking her to engage in sex with her two daughters was to produce child pornography.  Mr. Garcia told "ibalissasmom" that it "would be great" if she would take "nasty" pictures of her daughters and send them to him.  Aplt. Br. Appx., at 12.  Mr. Garcia said, "ill send u some [film] if u will take some nasty [pictures] for me."  *Id*., at 13.  Later,

13

he said, "im excited about seeing u and the girls . . . even if it is just on film."

*Id.*, at 15. Combined with numerous other requests for these pictures and explicit descriptions of the sexual activity, this evidence clearly establishes that Mr. Garcia's purpose was to produce visual depictions of sexually explicit conduct involving minors.

### III. Sentence Manipulation/Outrageous Government Conduct

Mr. Garcia argues that he should have received a downward departure in his sentence due to government misconduct. Mr. Garcia makes two attacks on the conduct of Agent Leazenby, who posed online as "ibalissasmom." First, he argues that Agent Leazenby enticed him into seeking the sexual exploitation of the daughters of "ibalissasmom," and that such enticement constitutes outrageous government conduct. Second, he argues that Agent Leazenby deliberately structured the operation in such a way as to achieve the highest sentence possible, i.e., that Agent Leazenby's choice to portray one of the daughters as age 7 constitutes sentence manipulation because it leads to the highest enhancement - 4 levels. We have not to date recognized a claim of "sentence manipulation" and find no occasion to do so here. *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996); *United States v. Scull*, 321 F.3d 1270, 1276 n.3 (10th Cir. 2003). However "we have addressed the same concept under the appellation of "outrageous governmental conduct." *Lacey*, 86 F.3d at 963. We will therefore

14

address Mr. Garcia's allegation that Agent Leazenby deliberately set out to achieve the highest sentence possible under the rubric of outrageous government conduct.

Although there are some circumstances in which a district court's refusal to depart downward is not subject to review, *United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir. 1990), a district court's refusal to depart based on a misapprehension of the departure provisions despite a correct application of the facts to the guidelines is reviewable. *United States v. Lowden*, 905 F.2d 1448, 1449 (10th Cir. 1990). Here, the district judge justifiably believed that the PROTECT Act of 2003 prevented him from granting a downward departure for this claim, a belief which we now know was error in light of *United States v. Booker*, 125 S.Ct. 738 (2005).[1] This misapprehension of the guidelines allows us to review the district court's refusal to depart downward. *Lowden*, 905 F.2d at 1449. In analyzing such a decision, we review the district court's factual findings for clear error, and its legal determinations de novo. *Sierra-Castillo,* 405 F.3d at 936 n.2; *Dillon*, 351 F.3d at 1318. We will continue to give due deference to the

---

[1]The PROTECT ACT, Pub.L. No. 108-21, amended 18 U.S.C. § 3553(b)(2)(A) to eliminate downward departures in cases of child sexual offenses. The Supreme Court held 18 U.S.C. § 3553(b)(1) unconstitutional and severed it from the sentencing guidelines in *Booker*. Although the Supreme Court did not directly address 18 U.S.C. § 3553(b)(2), this Court recently held that § 3553(b)(2) has also been severed. *United States v. Yazzie*, – F.3d – WL 1189822 at *4 (10th Cir. 2005).

district court's application of the guidelines to the facts. *Norris*, 319 F.3d at 1284.

"[T]he relevant inquiry" when assessing claims of outrageous government conduct "is whether, considering the totality of the circumstances . . . the government's conduct is so shocking, outrageous and intolerable that it offends the 'universal sense of justice.'" *Lacey*, 86 F.3d at 964, quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992), *United States v. Russell*, 411 U.S. 423, 432 (1973). This court has recognized the defense of outrageous government conduct, *United States v. Spivey*, 508 F.2d 146 (10th Cir. 1975), but has never rendered a decision upholding such a claim. "The absence of any decision by this court upholding such a claim . . . bears testament to its narrow scope." *Lacey*, 86 F.3d at 964. "To succeed on an outrageous conduct defense, the defendant must show either (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994).

Even absent the PROTECT Act's statutory prohibition on downward departure for claims of outrageous government conduct, Mr. Garcia's claim flounders for want of factual support. Mr. Garcia asserts that his "posture [was] passive" and that "he accepted an offer carefully prepared and suggested by the

16

agent." Aplt. Br., at 35. He argues that Agent Leazenby "was required to approach in a substantially less aggressive manner" when he learned that Mr. Garcia had not yet abused any children. *Id*. at 34. Mr. Garcia does not cite the source of this requirement. Contrary to these assertions, the internet and e-mail conversations show Mr. Garcia to have been actively pursuing not only the homemade pornography of "ibalissasmom" but also an opportunity to engage in sexual activity with her daughters. Less than twenty minutes into their initial conversation, Mr. Garcia suggested, "maybe we could meet . . . sometime." Aplt. Br. Appx., at 9. Less than four minutes into their second conversation, Mr. Garcia asked to sexually abuse the daughters of "ibalissasmom." *Id*. at 11. Shortly thereafter, he made his first request for the pornography - a request that was to be repeated several times at no prompting from Agent Leazenby. During their third conversation, Mr. Garcia again suggested they meet and stated that he could drive to Wyoming if needed. *Id*. at 18. It was Mr. Garcia, not Agent Leazenby, who suggested that "ibalissasmom" take "nasty" pictures. Agent Leazenby did not ask Mr. Garcia to send film for that purpose. Agent Leazenby did not create the crime nor did he coerce Mr. Garcia to commit the crime.

With respect to sentencing manipulation, Mr. Garcia argues that it was outrageous for Agent Leazenby to portray one of the daughters of "ibalissasmom" as seven years old since this led to a four-level enhancement for sexual

17

exploitation of a minor less than twelve years old.  His argument is not supported by any additional facts to suggest misbehavior on the part of Agent Leazenby and is undermined by his own stated preference for girls ages "11 and up to 15." Aplt. Br. Appx., at 8.  Sexual abuse of an eleven year old would also lead to a four-level enhancement.  Mr. Garcia apparently is urging us to adopt a per se rule whereby law enforcement officers are never allowed to structure "bait and hook" operations where the "bait," if taken, leads to the highest level sentence enhancement.  We decline to adopt such a rule.  "[I]t is not outrageous for the government . . . to induce a defendant to repeat, continue, or even expand previous criminal activity." *Pedraza*, 27 F.3d at 1521.  "[I]n inducing a defendant to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity . . . ." *Id*.  Here, Agent Leazenby did not even suggest the activity; Mr. Garcia did.  We perceive no misconduct on the part of Agent Leazenby, let alone conduct that is so outrageous that it "offends the universal sense of justice." *Lacey*, 86 F.3d at 964

## IV. *Booker* Violation

Mr. Garcia argues that his sentence violates his Sixth Amendment right to a trial by jury because the sentencing judge considered facts that were not proven to a jury beyond a reasonable doubt and to which he did not admit.  The government concedes that, in light of *United States v. Booker*, 125 S.Ct. 738 (2005) and this

18

Court's recent decision in *United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005), Mr. Garcia's sentence is constitutionally infirm and asks us to grant his motion to vacate his sentence and remand for resentencing.

## V. Conclusion

Based on the foregoing, though we reject Mr. Garcia's arguments regarding the application of the cross-reference and outrageous government conduct, his sentence is **VACATED** in light of *Booker*. We **REMAND** to the district court for resentencing consistent with the Supreme Court's decision in *Booker*.